485 So.2d 815 (1986)
THE FLORIDA BAR, Complainant,
v.
Wallace F. STALNAKER, Jr., Respondent.
No. 62657.
Supreme Court of Florida.
March 6, 1986.
Rehearing Denied April 23, 1986.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David G. McGunegle, Bar Counsel, Orlando, for complainant.
Richard T. Earle, Jr., of Earle & Earle, P.A., St. Petersburg, for respondent.
PER CURIAM.
The Florida Bar filed a complaint against Stalnaker, a member of the bar, claiming that he had violated disciplinary rules 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation) and 1-102(A)(6) (misconduct reflecting on fitness to practice law) as well as article XI, rule 11.02(3)(a) of the integration rule. The charges stemmed from Stalnaker's association with Jones and Bishop, P.A., with whom he began practicing law in the late 1970s.[*] Jones and Morrison were the sole partners in the firm during the period involved in this case and Stalnaker was an associate. After a hearing the referee made the following findings of fact: 1) In order to conceal the receipt of income in excess of his salary, Stalnaker did not report that excess income on his 1980 tax return; 2) Stalnaker, a salaried employee of the law firm, was to receive an annual salary plus a bonus from net profits; 3) for approximately two years Stalnaker accepted *816 money from clients, in excess of his fixed salary, which he deposited in his personal account and then gave the firm less than the full amount he had received; 4) Jones did not modify Stalnaker's contract orally, but, if such a modification had occurred, it would have impaired the interest of Jones' partner, Morrison. In mitigation the referee found that Stalnaker had a good reputation, that he had "found himself in an office that was very disorganized and fairly unproductive monetarily," that Stalnaker "became the main generating source of cases and legal financial revenues for the firm," and that Stalnaker had made restitution to the firm. The referee recommended that Stalnaker be found guilty and that he be suspended for twelve months and thereafter until he proves his rehabilitation and pays the cost of these proceedings.
Stalnaker petitioned for review, claiming that the referee's findings of fact do not support the recommended finding of guilt. Alternatively, Stalnaker argues that even assuming his guilt, the recommended discipline is excessive. After reviewing the record, we agree with Stalnaker's latter contention.
The record illustrates that after the professional association was formed Stalnaker was left to carry a disproportionate amount of the workload, earning for the firm about twice the fees that Jones and Morrison generated. All three men, however, earned identical salaries. Stalnaker alleges that in 1980 he considered leaving the law firm for financial reasons and discussed his intentions with Jones. Stalnaker further alleges that Jones, knowing Stalnaker generated the majority of the fees of the law firm and that should Stalnaker leave he would take several valuable clients with him, agreed to alter Stalnaker's remuneration agreement. According to Stalnaker, Jones agreed that Stalnaker could retain a portion of the fees he earned so long as he forwarded to the professional association an amount comparable to the fees he had earned in the past. Under the alleged agreement, Stalnaker was expected to forward enough money to the firm to cover his share of the overhead.
In reviewing the referee's report, we note that the referee merely found no oral agreement existed between Jones and Stalnaker which would rise to the level of an oral modification of the written employment remuneration agreement between the partnership and Stalnaker. Stalnaker contends that the critical issue in this case is not whether the oral agreement modified the original employment agreement, but whether he diverted funds without the consent or knowledge of Jones. Stalnaker maintains that the referee's findings failed to address the question of whether the alleged oral agreement took place at all. Significantly, counsel for the Florida Bar stated during in camera oral argument that the referee's statements amounted to a finding that although an oral agreement between Jones and Stalnaker did occur, the agreement was irrelevant because it did not rise to a level binding Jones. In light of both the testimony set forth in the record and the phrasing of the referee's finding, we agree with the Florida Bar's interpretation of the referee's report.
A referee's findings of fact are presumed to be correct and should be upheld unless clearly erroneous or lacking in evidentiary support. The Florida Bar v. Price, 478 So.2d 812 (Fla. 1985); The Florida Bar v. Hecker, 475 So.2d 1240 (Fla. 1985). The evidence presented before the referee boils down to a credibility contest between Stalnaker and Jones. The referee listened to and observed both of them, and, as our fact finder, resolved the conflicts in the evidence. See The Florida Bar v. Hoffer, 383 So.2d 639 (Fla. 1980). Our review of the record discloses support for the referee's findings, and, therefore, we will not disturb them.
Despite our approval of the referee's findings of fact, however, we view the recommended twelve month suspension as excessive. Although the oral agreement did not constitute a valid modification of the written remuneration agreement, Stalnaker had reason to believe he was receiving Jones' permission to divert the funds in *817 question. Moreover, Jones was the president of the professional association. Testimony indicated that Jones customarily handled the firm's financial arrangements with its employees outside the presence of Morrison. While Stalnaker exercised extremely poor judgment by handling his financial arrangements as he did, his actions fall short of a deliberate attempt to steal from the association. Compare The Florida Bar v. Gillin, 484 So.2d 1218 (Fla. 1986) (Court adopted recommended six-month suspension for stealing funds from firm).
Accordingly, we approve the referee's findings, but on the facts of this case disapprove the recommended twelve-month suspension. Therefore, we hereby suspend Wallace Stalnaker from the practice of law for ninety days, effective thirty days from the date this opinion is filed. Judgment for costs in the amount of $2,549.50 is hereby entered against Stalnaker, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., dissents with an opinion.
EHRLICH, Justice, dissenting.
Mr. Stalnaker was charged with misappropriating $36,922 from the firm by which he was employed. The referee found from the conflicting evidence that respondent while a salaried employee of the PA withheld for personal use portions of fees that belonged to the firm, and that in order to conceal these monies did not report them as taxable income to the IRS for 1980. Respondent testified that he had an agreement with the managing partner, Mr. Jones, that he could keep for his own use a portion of fees generated and collected by him so long as he remitted to the firm a sufficient portion of the fees to pay his fair share of the overhead and salaries. This purported agreement was vehemently denied by the partner involved. Mr. Morrison, the other principal in the PA said that he had no knowledge of this agreement. It was agreed that respondent had repaid the disputed sum to the firm. The referee's findings on this critical issue of fact was cryptic, to say the least. The finding was "there was no oral side agreement between Michael Jones and Wallace Stalnaker which would rise to the level of an oral modification of the employment remuneration agreement between the partnership and Wallace Stalnaker."
If respondent's withholding of funds was with the knowledge and consent of Jones, it was not wrongful in the sense that respondent could properly be disciplined for doing so. Such withholding of funds, under these circumstances may have exposed respondent and/or Jones to civil liability to the PA or to the other partner for such funds, but that was not the issue before the referee. The referee was not asked to pass on the contractual or civil aspect of the controversy, but whether respondent had withheld firm funds for personal use "without the permission or knowledge of either Messrs. Jones or Morrison until confronted in late August 1981" in the word of the Bar's complaint.
Respondent's counsel, with commendable candor, freely concedes that one-year suspension is in order if the fees were retained without the knowledge or consent of Jones.
The majority says there was "a creditability contest between Stalnaker and Jones. The referee listened to and observed both of them, and, as our fact finder, resolved the conflict in the evidence" and that the record supports the referee's findings. The Court goes on to say that "although the oral agreement did not constitute a valid modification of the written agreement, Stalnaker had reason to believe he was receiving Jones' permission to divert the funds in question." The Court is clearly reading something into the referee's report that I cannot discern. I see no such finding. Then the majority makes a finding of its own, one that nowhere appears in the referee's report, that respondent's "actions fall short of a deliberate attempt to steal from the association," but in a strange and incomprehensible twist, approves the referee's findings but disapproves *818 the recommended twelve-month suspension, and then proceeds to suspend respondent from the practice of law for ninety days.
What is the Court suspending respondent for if he did not steal from the association? If he took the firm's money with Jones' knowledge and consent, he did not misappropriate or steal the firm's funds, and if he did not steal, the Bar hasn't proved its charges.
I have previously expressed my thoughts and feelings about a partner misappropriating money from a firm in a concurring and dissenting opinion in The Florida Bar v. Gillin, 484 So.2d 1218 (Fla. 1985). My feelings are the same if the misappropriating is done by an associate.
If this Court cannot conclude from the referee's report a finding that there was no oral side agreement between Jones and Stalnaker, then there is no basis for disciplining Mr. Stalnaker.
I think justice would best be served by remanding the case to the referee with the instructions that he make a specific finding whether there was an oral agreement between Jones and Stalnaker. If there were, then Mr. Stalnaker should be exonerated from any wrongdoing. If there were no such oral side agreement, then he should be properly disciplined. A lawyer's reputation and career are far too important to have the Court suspend him from the practice of law without a specific finding of wrongdoing.
For these reasons, I dissent.
NOTES
[*] Paragraphs 7 and 8 of the complaint read:

7. Sometime in 1979 or early 1980, the respondent altered his handling of fees and costs being generated by him for the professional association from his cases. Instead of turning over all monies received directly to the association's bookkeeper, on some cases respondent deposited the checks and cash he received directly into his personal bank account at the Barnett Bank of Altamonte Springs and later remitted a portion of those monies in cash to the association's bookkeeper. On other cases, respondent turned over the checks and some portion or all of the cash received directly to the association's bookkeeper. The association maintained its account at a different bank.
8. Respondent systematically diverted a portion of the legal fees being generated by him for the professional association from the association to his own personal bank account and use without informing the bookkeeper or principals, Jones and Morrison. Respondent followed this improper course of conduct without the permission or knowledge of either Messrs. Jones or Morrison until confronted in late August, 1981. Respondent then left the association.