484 So.2d 1218 (1986)
THE FLORIDA BAR, Complainant,
v.
Joseph S. GILLIN, Jr., Respondent.
No. 65651.
Supreme Court of Florida.
March 6, 1986.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee and David G. McGunegle, Bar Counsel, Orlando, for complainant.
Richard T. Earle, Jr. of Earle & Earle, St. Petersburg, for respondent.
PER CURIAM.
The Florida Bar filed a complaint against Gillin, a member of the bar, alleging that he had violated the Florida Bar Integration Rule, article XI, rule 11.02(3)(a) (act contrary to honesty, justice and good morals) as well as disciplinary rules 1-102(A)(3) (illegal conduct involving dishonesty, fraud, deceit, and misrepresentation) and 1-102(A)(6) (conduct adversely reflecting on fitness to practice law). The charges arose from Gillin's mishandling of certain fees which a client paid directly to him. After a hearing, the referee made the following findings of fact.
Gillin represented a client in a divorce for which the client's husband paid Gillin $5,000 in attorneys fees. This amount was placed in the account maintained by the firm in which Gillin was a partner. All fees which firm members collected were to *1219 be placed in the account for distribution pursuant to a fee distribution formula. As part of the property settlement, Gillin was to receive $75,000 in two equal installments which he was to forward to the client. At some point after the divorce, Gillin informed the client that she owed him $25,000 in fees, a claim to which she apparently acquiesced. Gillin then instructed his client that upon receipt of the first $37,500 payment he would pay $20,000 to her. She was then to provide him with a check for $12,250 made payable to Contemporary Cars, Inc., located in Orlando, Florida. Upon receipt of that check, Gillin would then pay to the client the balance of the funds from the first payment. The exchange of monies went as planned. Gillin used the check as a down payment on a 1984 Porsche automobile. The dealership returned all but $1,000 of the down payment so Gillin could place the funds in a certificate of deposit in an account in his own name. Subsequently, Gillin rented a post office box. When he received the second installment of the property settlement in the amount of $37,500, he released $20,000 to the client and told her that he would pay over the balance upon receipt of a check, again made payable to Contemporary Cars, Inc., in the amount of $12,500. Gillin instructed her to send this check to his post office box. These arrangements dissatisfied the client and she began inquiries which culminated in a complaint to the Bar. After the Bar began its investigation, Gillin made restitution to the client, effectively retaining only the $5,000 the husband paid and a $500 retainer that the client had initially paid.
At the disciplinary hearing, Gillin argued that he intended to take title to the car in the firm's name. Testimony by the car salesman supports Gillin's claim that he stated this intention when he tendered the initial deposit for the car. Gillin argues that he believed this action would in some way aid in resolving a dispute he had with the firm regarding the fee distribution formula. Yet Gillin admits his acts were irrational and can offer no explanation as to how his dishonesty would resolve the problem. In his cross-appeal, he urges that the evidence is insufficient to show an intent to steal money from his partners. We find, however, from our review of the record that the evidence is sufficiently clear and convincing to support the referee's conclusion that Gillin did indeed intend to steal the $25,000 from the firm by depriving them of the fee.[*] The referee recommended that Gillin be found guilty and that he be suspended for six months and thereafter until he proves his rehabilitation and pays the cost of these proceedings.
This Court will not tolerate misguided, irrational acts of self-help involving disputes between partners who are members of the Bar. We distinguish this case from a situation where the attorney has at least some basis for believing the law firm's partners have consented to his actions. Compare Florida Bar v. Stalnaker, 485 So.2d 815 (Fla. 1986) (Court decreased recommended twelve month suspension to ninety day suspension where president of professional association indicated consent to attorney's actions). In the case at bar, Gillin was well aware he was diverting firm funds behind the backs of his partners.
The referee did not recommend a longer suspension or disbarment because of the mitigating factors that the referee found: (1) no party suffered any real damage as a result of respondent's misdeeds; (2) this is the first time since his admission to the Bar in 1974 that Gillin has been referred to the Bar for a disciplinary matter; (3) he has been active in church and civic activities; and (4) he has been active in local Bar functions, including, ironically, the grievance committee.
Therefore, we approve the referee's findings and recommendations. We hereby suspend Joseph S. Gillin, Jr., from the practice *1220 of law for six months and until he proves rehabilitation, effective thirty days from the date this opinion is filed. Judgment for costs in the amount of $674.03 is hereby entered against Gillin, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion.
EHRLICH, Justice, concurring in part, dissenting in part.
I concur with the Court's judgment of guilt but dissent as to the discipline imposed.
The Court has in my view by its opinion taken a giant step backward in its regulation of the discipline of the bar. The people of Florida in its constitution have entrusted to the Court the "exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." Article V, section 15. By its actions today the Court has shirked its duty.
A referee has found that respondent committed a dishonest act. He wrongfully misappropriated funds that belonged to others, his law firm, to his own use, and upon being caught returned his ill-gotten gains. While restitution is desirable and even commendable, it does not erase or lessen the offense or the violation of the disciplinary rules. In this case, respondent had no course of action except to make restitution. Under such circumstances, he merits no credit for that act. The Court has approved the findings of the referee. There is thus no question of guilt. The only issue before the Court is the one of discipline.
It is my opinion that stealing by a lawyer whether from a client, a member of the general public or from his law firm, is utterly reprehensible, and that by such act the lawyer has forfeited his position in society as a member of the bar and an officer of the Court, and disbarment is the proper discipline. I recognize that oft times there are extenuating or mitigating circumstances which call for lesser punishment. I agree that this case falls in the latter category. The Board of Governors urged a one-year suspension. That should be the bare minimum. If respondent had stolen from a client or from the public, I feel quite confident that this Court would have imposed a much harsher discipline. Why should it be otherwise when the victims are the lawyer's partners? I am apprehensive that the Court's decision gives reason to the profession's many detractors who say that the Court is more interested in protecting its own than carrying out its constitutional role.
While I do not know what the precise numbers are, I daresay that a substantial percentage of the members of The Florida Bar choose to practice law within the framework of a partnership. The distribution of the net earnings of the partnership to the individual partners can be and is quite often a source of controversy among the members. Ideally, each partner will receive net distributable income which will be commensurate with the amount of billable hours he or she has put on the books, the amount of business brought in, and other tangible and intangible factors. It is not uncommon for a partner to have a particularly good year or a bad year, but year in and year out if a partner is taking out more than his share, based on his overall contribution to the firm, others of the firm are going to be unhappy, and by the same token, if a partner is consistently taking out less than his share, he's going to be dissatisfied. If a partner has reason to believe that he is being shortchanged and that his financial contribution to the firm is more than he is taking out, the proper and only forum to resolve this is a meeting of the partnership, and if satisfaction cannot be obtained, dissolution of the firm as it is then constituted, is the answer.
Self help to rectify what is perceived to be an iniquity in the formula for distribution of the firm's earning can never be a solution to this problem. Mistrust among *1221 partners has no place in a firm. Each partner must of necessity have almost blind faith and confidence in the honesty and integrity of his partners. This is the way it should be, and a breach of this exceedingly close relationship is an offense that merits discipline commensurate with the gravity of the offense.
I do not believe that the Court has fulfilled its constitutional obligation and duty of discipline of members of the bar in this case, and for that reason, I dissent as to the discipline imposed.
NOTES
[*] The referee's report raises some question about the propriety of the fee, but the Bar concedes the issue was not raised in the complaint, apparently through oversight and the question is therefore not a basis for decision here.