PER CURIAM.
This disciplinary proceeding against Eugene Collier is before us on complaint of The Florida Bar and the report of the referee. The referee recommends that Collier be suspended for six months and thereafter until proof of rehabilitation is presented. Collier petitions this Court for review of the referee’s findings of fact and recommendations of guilt and discipline. We have jurisdiction, article V, section 15, Florida Constitution, and approve the referee’s findings and recommendations.
The factual circumstances surrounding this disciplinary proceeding are as follows. A testamentary trust was created in the 1930s designating Elton Crisman, Sr. as beneficiary of a life estate with respondent’s wife designated to receive the corpus of the trust if she survived Crisman, Sr., her father. There were provisions for a contingent remainder to other persons if Crisman, Sr. survived his daughter. In the 1950s a petition to terminate the trust in favor of respondent’s wife was denied but she was named as a trustee. Crisman, Sr. continued to receive income from the trust through mid 1983.
*390 The referee’s findings of fact are as follows:
AS TO COUNT I
1. On June 29, 1983, the Respondent had Mr. Crisman, Sr., who was not represented by any other attorney, execute a waiver and relinquishment of his interest in this trust. The effect of this relinquishment would be to have the corpus of the trust pass to Mrs. Collier, who in addition to being the trustee, was also the beneficiary of the corpus of the trust upon the extinguishment of Mr. Cris-man’s interest.*
2. Just prior to executing the aforesaid waiver Mr. Crisman had visited his son who lived in Blairsville, Georgia. During this visit Mr. Crisman exhibited a lack of familiarity with his surroundings and appeared to be disoriented much of the time. He flew back to Florida from Georgia by commercial airline, but was tagged and monitored as a small child during this flight. On the day the waiver was executed the Respondent drove to Ocala to visit with Mr. Crisman. They took him out to get ice cream and asked him to sign some documents. Mr. Cris-man later did not know what documents he had signed nor what the effect of the documents might be.
3. The only income Mr. Crisman received other than this trust income was a small pension from Ford Motor Company and his Social Security income. He had no significant assets and it strains the credibility of this Court to believe that he would knowingly relinquish this income.
4. This referee finds that this Respondent secured this waiver knowing that Mr. Crisman was not competent to execute it.
AS TO COUNT II
1.In July, 1983, Mr. Crisman Sr. was found incompetent and his son, Elton Crisman, Jr., was appointed guardian of his person and estate. This appointment was made over the objection of Respondent who sought to have either himself or his wife substituted as guardian.
2. Although Mr. Crisman had been receiving money from the estate for years, he never received another payment from the time the guardianship was established.
3. Shortly after the guardianship was established the guardian found it necessary to institute a law suit against the Respondent and his wife. The lawsuit alleged that the wife, as trustee, and the Respondent, as her attorney, had engaged in improper conduct in their handling of the estate.
4. Between the years 1968 and 1979, the attorney for the estate, ... received a total of $811.20 as attorney fees for his work for the estate. A total of $1,200.00 was paid to the Respondent’s wife for her services as trustee. Between 1980 and 1983, when the Respondent was attorney for the trustee, he was paid $7,595.00 in legal fees. His wife received $6,200.00 for her services as trustee during this period.
5. After being advised of the lawsuit against him, the Respondent proceeded to engage in prolonged dilatory action to try to delay the lawsuit rather than furnish an accounting of his activities to the guardian. He made numerous motions to continue, motions for protective orders, and appeals. In the process of this litigation the Respondent argued that the guardian was not entitled to know anything about the trust because Mr. Cris-man, Sr. had relinquished his interest in the trust on June 29, 1983. This is the waiver referred to in Count I which appears to have been wrongfully obtained by the Respondent. The Respondent also relied upon a document purportedly signed by Mr. Crisman, Sr. on December 11, 1952, in which he waived his interest in the estate. This reliance was made notwithstanding that the court in the 1952 action apparently found that the *391 waiver had not been effectively made. In fact, Mr. Crisman, Sr. continued to receive money from the trust up until Mr. Crisman, Jr. was appointed guardian in 1983. It would appear to be inconsistent for Mrs. Collier, as trustee, to maintain that Mr. Crisman’s interest had terminated in 1952 when she continued to make payments to him for over 25 years. The reliance by the Respondent on the 1952 waiver was a fraud upon the court as was an effort to rely on the 1983 waiver.
6. At all times during the litigation between the guardian and Respondent and his wife, the Respondent was, at the very least, a witness to many of the substantive matters being disputed in the litigation. He was also a real party in interest because some of the allegations were to the effect that he had personally come into possession of property which should have remained in the estate of Mr. Cris-man. The obvious interest of the Respondent in the litigation provides a strong motive for his continued efforts to obstruct and delay the litigation. That interest also clearly should have prevented him from acting as counsel for his wife, the trustee.
7. On March 1, 1984, the Respondent appeared before ... a circuit judge in the Eighteenth Judicial Circuit, and asked that a hearing which had been scheduled by the opposing side on the Respondent’s motions, scheduled for March 1, 1984, be continued. In his request for a continuance the Respondent alleged that he had a conflicting appearance scheduled before another judge of that circuit.... This representation was false. The Respondent had only one matter pending ... and he had appeared before the judge on February 28, 1984, and had been permitted to withdraw from representation in a criminal matter that was pending before that judge. The representation made by the Respondent on March 1 was made with the knowledge that it was blatantly untrue.
AS TO COUNT III
1. On April 1, 1985, Katharine Collier, the Respondent’s wife, sent a letter to a public housing officer in Calhoun, Georgia, in which she advised that officer, Mr. Joe Pool, that she was acquainted with one of the public housing tenants and that the tenant had failed to report certain income she had received. The tenant was one Mary Nell Crisman, a former wife of Mr. Crisman, Sr. Mary Nell Crisman had apparently married Mr. Crisman after the settlor of the disputed trust, Charlotte Scranton Crisman, had died in 1939. One might could [sic] assume that this letter had been prompted simply by the interest of a taxpayer and a citizen residing in Merritt Island, Florida, concerned that a tenant in public housing in Calhoun, Georgia, might not be paying the appropriate amount of rent because she had understated her income. One might also could [sic] presume that the letter was motivated by the fact that on March 22, 1985, that same Mrs. Cris-man had written a letter to The Florida Bar, complaining about the Respondent’s representation of her in another legal matter. The evidence presented at the hearing seems to suggest that the letter was prepared at the Respondent’s office, on a typewriter in that office, and that it may have been prepared by Mrs. Collier, who frequently worked for her husband at the office.
The referee recommended that respondent be found guilty of violating the following Florida Bar Integration Rules and Florida Bar Code of Professional Responsibility, Disciplinary Rules:
COUNT I
Article XI, rule 11.02(3)(a) (conduct contrary to honesty, justice and good morals).
Disciplinary Rule 1-102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation).
Disciplinary Rule 1-102(A)(6) (conduct reflecting adversely on fitness to practice law).
COUNT II
Article XI, rule 11.02(3)(a) (as above).
*392 Disciplinary Rule 1-102(A)(4) (as above).
Disciplinary Rule 1-102(A)(5) (conduct prejudicial to the administration of justice).
Disciplinary Rule 1-102(A)(6) (as above).
Disciplinary Rule 5-101(A) (accepting employment under such circumstances where he knew or it was obvious that his own personal or financial interest would be involved).
Disciplinary Rule 5-101(B) (accepting employment where he knew or it was obvious he would be called as a witness).
Disciplinary Rule 5-102(A) (failing to withdraw after accepting employment after learning or after it became obvious that he would be called as a witness in contemplated or pending litigation).
Disciplinary Rule 5-105(B) (continuing multiple employment where the exercise of independent professional judgment on behalf of a client was likely to be adversely affected by representation of another client, himself).
The referee recommends that respondent be found not guilty of Count III. The referee also recommends that respondent be suspended for a period of six months and thereafter until he shall prove his rehabilitation as provided in article XI, rule 11.10(4).
It is well settled that the referee serves as the finder of fact for this Court and that findings of fact will be upheld unless they are without support in the record or clearly erroneous. The Florida Bar v. Stalnaker, 485 So.2d 815 (Fla.1986), and cases cited therein. Respondent testified and controverted much of the evidence introduced by the Bar. Based largely on his testimony, respondent urges that the referee’s findings of fact are contrary to the evidence, not supported by the record, and erroneous. We disagree. The referee heard the witnesses, judged their demeanor and credibility, reviewed all of the evidence, and resolved such conflicts as existed. Our review of the record satisfies us that the referee’s findings of fact are supported by clear and convincing evidence. We approve the referee’s findings of fact.
We agree also with the referee’s recommendation that six months suspension with proof of rehabilitation required thereafter is an appropriate punishment for these violations. Accordingly, respondent Collier is suspended for six months effective thirty days from the date of this opinion, thereby giving respondent sufficient time to take the necessary steps to protect his current clients. Respondent shall accept no new clients from the date of this opinion until the expiration of his suspension.
Judgment for costs in the amount of $2,363.98 is hereby entered against responT dent, for which sum let execution issue.
It is so ordered.
McDonald, c.j., oyerton, EHRLICH, SHAW and BARKETT, JJ., and ADKINS, J. (Ret.), concur.

The Bar acknowledges that the effect of the relinquishment was to pass the life estate income of the trust to respondent’s wife, not the corpus. Mr. Crisman died in 1985 and the trust corpus passed to respondent’s wife.