**In re Gary M. CUPPLES, Respondent.**

No. 80968.

Supreme Court of Missouri,
En Banc.

Nov. 24, 1998.

Rehearing Denied Dec. 22, 1998.

John E. Howe, Chief Disciplinary Counsel, Sam S. Phillips, Staff Counsel, Jefferson City, for Informant.

Gary M. Cupples, Kansas City, for Respondent.

COVINGTON, Judge.

This is the second disciplinary proceeding against Gary M. Cupples. In *Matter of Cupples*, 952 S.W.2d 226, 237 (Mo. banc 1997), this Court held that Cupples violated duties to both his former law firm and the law firm's client by secreting client files as he prepared to withdraw from the firm, removing files from the law firm without the client's consent, and failing to inform the client of the change in the nature of representation. Cupples was also found to have engaged in conduct including dishonesty, fraud, deceit, or misrepresentation. Rule 4–8.4(c). He was publicly reprimanded. *Id.*

The present case is an original disciplinary proceeding instituted by the Fourth Regional Disciplinary Committee and the Chief Disciplinary Counsel, Informant. Cupples was charged by information with violation of Rule 4–8.4(c). The information charged Cupples with secretly maintaining a separate law practice while engaged in full-time practice with the law firm of Wallace, Saunders, Austin, Brown & Enochs, Chartered, and using firm assets in representing his separate, private, clients. The information charged that Cupples' actions were contrary to Wallace Saunders' expectations that Cupples would devote one hundred percent of his professional time and effort to the firm. The information further charged Cupples with engaging in conduct involving dishonesty, fraud, deceit and misrepresentation in that he

breached: (1) his duty of "finest" loyalty to the Wallace Saunders firm; (2) his duty to be candid and fair to the law firm; (3) his duty not to put his self interests before the interests of the law firm; and (4) his duty not to compete with the law firm. The information also charged Cupples with failing to disclose to the law firm the clients he represented in his separate practice, thereby exposing the law firm to potential malpractice liability and conflicts of interest.

The disciplinary hearing committee found that Cupples violated Rule 4–8.4(c) as charged and recommended that Cupples be suspended from the practice of law for a period of one year, with conditions for reinstatement. This Court finds that Cupples engaged in misconduct by concealing the fact that he was conducting a private law practice while engaged in full-time employment with the law firm, using firm resources for his own personal gain, and exposing the firm to potential malpractice liability. We order Cupples' license to practice law suspended indefinitely with leave to apply for reinstatement no sooner than six months from the date of this opinion.

■■■ The findings of fact, conclusions of law, and recommendations of the disciplinary hearing committee are advisory. *See In re Oberhellmann,* 873 S.W.2d 851, 852–53 (Mo. banc 1994). This Court considers and weighs the evidence *de novo* and reaches its own conclusions of law. *Id.* A preponderance of the evidence indicating professional misconduct is required before discipline will be imposed. *Cupples,* 952 S.W.2d at 228.

The following facts are undisputed. In June of 1993, Cupples left Deacy & Deacy, the law firm in which he had practiced law for a number of years, to begin a solo practice. In September of 1994, the Wallace Saunders firm hired Cupples for a yearly salary of $70,000.

Parts of Cupples' discussions with the Wallace Saunders firm regarding his employment were memorialized in a memorandum dated September 6, 1994. The memorandum reflects Cupples' starting salary, which was substantially higher than Wallace Saunders paid its beginning associates. In addition, Cupples was designated as "of counsel." The term was not defined. In "of counsel" relationships, the meanings of the term "of counsel" are as varied as the ways in which the term is used. The relationship defines the term. The designation in this case was intended, in part, to reflect Cupples' years of experience in the practice.

The memorandum states that Cupples would be considered for partnership after three years with the firm. The firm agreed to provide Cupples with a computer and "full benefits." The term "full benefits" was not defined. The memorandum did not reflect the fact that the firm would be paying Cupples' health insurance, bar fees, malpractice insurance, and providing Cupples with firm business cards. The parties agreed that Cupples would use some of his own furniture in his office at the firm and the firm would pay the moving expenses.

The memorandum contained agreements regarding certain pending contingent fee cases Cupples would bring to the firm. A list of seven files was attached to the memorandum. Cupples and the firm agreed that Cupples would list all of his pending cases and estimate a percentage of the work already completed in each case. The firm was to assume responsibility for all of the expenses in those cases. Cupples and the firm would each receive a portion of the fees the cases generated based upon the percentage of work Cupples had completed prior to joining the firm.

After joining the Wallace Saunders firm, Cupples continued to maintain a practice separate from his practice at the firm. Prior to commencing his association with Wallace Saunders, Cupples had placed an advertisement for his private practice in the Yellow Pages, the advertisement section of the telephone book. The advertisement continued to run during and after his association with Wallace Saunders. Cupples also maintained a separate office in which he had a private telephone. That telephone number was listed in the Yellow Pages advertisement. Cupples arranged for the private telephone number to be forwarded to his telephone at the firm's Kansas office, where his office was located. As a result of the advertisement in

the Yellow Pages, Cupples obtained four clients. On pleadings filed for his private clients, Cupples used the Wallace Saunders Missouri office address, without the name of the firm, and listed his private telephone number. The outside clients were not processed through the firm's customary channels. Cupples performed services for his private clients during regular business hours at the firm. Cupples also directed his secretary at the firm to draft a letter to one of his private clients on firm stationary. The letter was never sent.

Concern regarding Cupples' performance developed after receipt of a fee from one of the cases Cupples brought to the firm. Cupples told the firm that he had completed seventy-five percent of the work in the case when he joined the firm. Based upon his agreement with the firm, Cupples was to receive seventy-five percent of the fee and the firm was to receive the remaining twenty-five percent. Because it was the firm's policy to require all attorneys to keep records of time spent on each individual case, including contingent fee cases, Jerry Bales, the firm's managing partner and associate supervisor, requested Cupples' time sheets for the case. The firm customarily used time records to determine whether a case was profitable. The number of hours Cupples worked on the case would not affect his share of the fee.

Bales discovered that Cupples had requested that a large portion of the hours he worked on the case be purged from the computer billing system. The unedited version of the time sheet reflects that Cupples devoted 119 hours to the case. The edited time sheet states that he worked only 26.8 hours. Cupples offered no explanation for the discrepancies between the two time sheets. In addition, Bales closely examined Cupples' time records in the fall of 1995. Bales testified that he and other members of the firm had concerns regarding Cupples' billing practices. The majority of Cupples' billable time for the year he worked at the firm was spent on the contingent fee cases he brought to the firm. For example, Cupples reported that he worked 453 hours on a contingent fee case that he claimed was eighty percent complete when he brought the case into the firm. Bales also testified that the time sheets reflected that a large portion of Cupples' total billable time for the year was spent researching rudimentary issues. Even though Cupples claimed to have worked 2200 hours of billable time during his year at Wallace Saunders, his work generated only $47,800 in fees. Cupples' performance did not meet the firm's expectations. The firm terminated Cupples' employment in December of 1995.

After Cupples left Wallace Saunders, the firm began to receive mail regarding cases Cupples had not disclosed to the firm. The firm discovered that Cupples represented four clients whom he never reported to the firm. He worked on these cases while he was working for the firm, during firm hours. Cupples failed to submit intake sheets for any of these clients. Without an intake sheet, the firm was unable to determine whether any conflicts existed, thus potentially exposing the firm to malpractice liability. Cupples did not maintain private malpractice insurance at any time during his employment at the firm. One of Cupples' private clients was a plaintiff in a worker's compensation case in which the firm represented the defendant.

After Cupples' termination, the firm also discovered that Cupples collected fees from at least two of the cases that were pending when he joined the firm and did not share any portion of the fees with the firm. At the initial regional disciplinary committee hearing, Cupples denied having received any fees from these cases. Cupples now admits that he received fees from two of the cases.

Although the facts set forth above are undisputed, the nature of Cupples' relationship with his employer and the expectations of the parties with respect to the relationship are in dispute. Barry Warren, the hiring partner at the firm, and Bales, the associate supervisor, testified that although Cupples was considered "of counsel," he was expected to comply with associate requirements. Cupples denies this. He claims that his designation as "of counsel" means that he was not an associate, so he was not required to comply with the requirements set forth in the associ-

ate manual provided by Wallace Saunders. The requirements included developing new clients and submitting intake sheets for all files. It was the firm's policy to use the intake sheets to enter a client into the firm's computer system. The system is used to keep track of billing as well as to determine whether any conflicts of interest exist. The firm distributed a revised associate manual on July 24, 1995. According to the revised manual, all attorneys were full-time employees, required to report and deliver all income to the firm and to bill 2000 hours each year. Cupples denies that he received the revised associate manual. He claims that he did not have notice of any of the requirements contained in the revised manual.

Both Warren and Bales testified that Cupples was expected to devote one hundred percent of his time to the firm. The firm believed that any business Cupples generated would be brought into the firm. Cupples denies this, resting on the fact that the written memorandum generated from his discussions with the firm regarding his employment does not state that he was prohibited from maintaining a separate practice or that he would devote one hundred percent of his time to the firm.

Warren and Bales also testified that the pending cases Cupples brought with him when he joined the firm would become property of the firm. Cupples denies this. He claims that the cases never became the property of the firm. In addition, Cupples testified that he did not share the fees generated from these pending cases because he believed that the memorandum implied that he would be working for the firm when the fees were shared. He claims that he should not have to pay the firm because his employment was terminated prior to the receipt of the fees.

Both Warren and Bales testified that they did not know that Cupples intended to maintain his separate practice when he joined the firm. Cupples admits that he never specifically told the firm that he would be maintaining a separate practice while working for the firm. Cupples contends, however, that he presumed that the firm was aware of the fact that he would continue to maintain his separate practice after he joined the firm. As a basis for this presumption, he cites the fact that the firm knew he had a practice before he came to the firm and the fact that he did not move all of his office furniture to the firm. Cupples also stated that the firm could have looked up his advertisement in the Yellow Pages at any time.

Finally, Warren and Bales testified that because Cupples was an employee of the firm, any cases that he obtained while employed at the firm would become property of the firm. Cupples claims that the clients that he obtained while he was working for Wallace Saunders were part of his own separate law practice. He says that the clients contacted him as a result of his advertisement in the Yellow Pages. Cupples never disclosed the additional clients to the firm because it "wasn't their business."

Although Cupples admits that he failed to submit intake sheets for his private clients, Cupples testified that he thought he checked for conflicts. His system for checking conflicts involved standing over the shoulder of an employee of Wallace Saunders and asking her to check a name to determine whether the name was in the firm's computer system. If the name was not in the system, Cupples assumed there was no conflict. Cupples further claims that he had no agreement with the firm to split the fees generated from his private cases, nor did the firm agree to pay for the expenses related to the private cases. He claims that he never held himself out as acting on behalf of Wallace Saunders when he was representing his private clients. Because of concern for potential conflicts and malpractice liability, however, the Wallace Saunders firm withdrew from all of the cases Cupples handled without the firm's knowledge where Cupples used the firm's address.

■ Even taking as true Cupples' version of the facts and circumstances of this case, Cupples has violated Rule 4–8.4(c) in that he was dishonest and deceitful in his dealings with the Wallace Saunders firm. It is undisputed that Cupples did not advise the firm of his separate practice, his separate office, the Yellow Pages advertisement promoting his separate practice, and the private telephone number used in the advertisement, which

was forwarded to his phone at Wallace Saunders. He failed to complete intake sheets to advise the firm of new clients he obtained through his Yellow Pages advertisement. Cupples used firm resources in representing his private clients. He used the firm's Missouri office address on pleadings for his private clients without using the name of the firm, and listed his private telephone number. He performed services for his private clients during regular business hours at the firm. He did not maintain separate malpractice insurance; he was covered only under the firm's malpractice insurance. He collected fees from cases to which the firm committed its assets without advising the firm of the fees or paying the firm any part of the fees. Cupples was deceitful and dishonest by committing affirmative acts and by failing to disclose matters to the firm that should have been disclosed.

Deceitful conduct by any lawyer, let alone a lawyer having more than twenty years experience in the practice of law, raises legitimate questions of credibility. Where facts are in dispute, therefore, this Court finds that the firm's representatives, Warren and Bales, are credible and Cupples is not. Cupples' portrayal of his relationship with Wallace Saunders lacks plausibility. Cupples' own representation of the facts during oral argument in this Court did not assist his cause. On the one hand, even at this stage of the proceeding, Cupples declared that the written memorandum constituted the entire understanding of the parties. On the other hand, Cupples admitted, as he must, that there is no delineation in the memorandum of his benefits, which included health insurance, malpractice coverage, and bar fees, which all parties clearly understood that Cupples would receive. Cupples provided no plausible explanation for these discrepancies. With respect to whether Wallace Saunders understood that Cupples was going to maintain a solo practice while working for the firm, Cupples represented to this Court that he thought the record was clear that the firm was aware that he maintained a separate practice. Almost immediately thereafter, however, in response to a question relevant to the subject, he represented that he could not say precisely of what the firm was aware.

This Court has no confidence in Cupples' word.

Cupples engaged in conduct involving dishonesty, fraud, deceit and misrepresentation. Cupples misled his employer regarding his separate practice, used firm resources for his own personal gain, and exposed the firm to potential malpractice liability. Cupples' actions constitute professional misconduct under Rule 4–8.4(c).

It remains to consider discipline. Cupples contends that because no client was harmed and because no client's expectations regarding whether Cupples acted as a solo practitioner or in his capacity as "of counsel" to the firm was at issue, then he should be free of discipline, or, at maximum, reprimanded. If this case were nothing more than a dissolution of a business relationship with a dispute over fees, this Court might be inclined to allow the dispute to be handled as a civil matter, rather than through a disciplinary proceeding. This case, however, involves much more. It involves dishonesty, deceit, and misrepresentation. The firm believed that Cupples was a full time employee who would devote one hundred percent of his professional time and efforts to the firm. Cupples' actions directly contradicted the firm's expectations, constituted an appropriation of firm resources for private gain, and exposed the firm to potential malpractice liability. His conduct was deceitful, dishonest, and misrepresentative. As a consequence, this case requires discipline and mandates sanctions.

■ The American Bar Association's Standards for Imposing Lawyer Sanctions (1991) (ABA Standards) recommend suspension when a lawyer knowingly violates a duty owed to the profession, as Cupples has done, and "causes injury or potential injury to a client, the public, or the legal system." ABA Standards, Rule 7.2. "Reprimand ... is appropriate only where the attorney's breach of discipline does not involve dishonest, fraudulent, or deceitful conduct on the part of the attorney." *In re Littleton*, 719 S.W.2d 772, 777 (Mo. banc 1986). This Court imposed the ultimate sanction of disbarment where a lawyer's conduct involved dishonesty and misrepresentation. In *In re Panek*, 585 S.W.2d 477, 479 (Mo. banc 1979), this Court disbarred a lawyer for defrauding another .

lawyer. This Court disbarred a lawyer for submitting false evidence to a court in *In re Storment*, 873 S.W.2d 227, 231 (Mo. banc 1994). In *In re Oberhellmann*, 873 S.W.2d at 856, this Court disbarred a lawyer where the lawyer lied to a tribunal regarding his client's residence in an attempt to retain federal diversity jurisdiction. Under the law, therefore, Cupples' conduct would seem to require, at a minimum, suspension.

 In determining the proper sanction, this Court must also consider aggravating and mitigating circumstances. Factors considered in aggravation include: prior disciplinary offenses; dishonest or selfish motives; a pattern of misconduct; multiple offenses; refusal to acknowledge the wrongful nature of conduct; substantial experience in the practice of law; and, indifference in making restitution. ABA Standards, Rule 9.22. Cupples committed prior disciplinary offenses, exhibited dishonest and selfish motives, engaged in a pattern of misconduct, committed multiple offenses, and has substantial experience in the practice of law. *See Matter of Cupples*, 952 S.W.2d 226. In addition, he has refused to admit the wrongful nature of his conduct and has been indifferent to making restitution. These factors fortify a finding that suspension is mandated, if not disbarment.

In *Matter of Cupples*, 952 S.W.2d at 237, Cupples was spared suspension only because of certain mitigating circumstances. None of the mitigating circumstances enumerated in ABA Standards Rule 9.32 or in *Matter of Cupples* applies to the instant case. This Court notes, however, that there is no evidence in the record that Cupples' conduct harmed any clients. This one circumstance may be considered in mitigation of Cupples' misconduct.

After consideration of all the evidence and the law, this Court orders Cupples' license to practice law suspended indefinitely with leave to apply for reinstatement no sooner than six months from the date of this opinion.

All concur.