912 So.2d 544 (2005)
THE FLORIDA BAR, Complainant,
v.
Kenneth David KOSSOW, Respondent.
No. SC03-1900.
Supreme Court of Florida.
May 19, 2005.
Rehearing Denied September 28, 2005.
John F. Harkness, Jr., Executive Director, John Anthony Boggs, Staff Counsel, The Florida Bar, Tallahassee, FL, and Lillian Archbold, Bar Counsel, The Florida Bar, Fort Lauderdale, FL, for Complainant.
Chandler R. Muller of Muller and Sommerville, P.A., Winter Park, FL and David A. Henson, Brevard, NC, for Respondent.
PER CURIAM.
The Bar has petitioned for review of a referee's report recommending that attorney Kenneth Kossow receive a public reprimand for unethical conduct in connection with the violation of an agreement between Kossow and the law firm that employed him. We have jurisdiction. See art. V, § 15, Fla. Const. We consider Kossow's *545 misconduct to be a serious breach of his duty of loyalty to his law firm, and for the reasons set forth below, we reject the referee's recommended discipline and impose a thirty-day suspension.

BACKGROUND
In July 2001, Kossow was hired by the law firm of Hunt, Cook, Riggs, Mehr & Miller, P.A. (the firm). At that time, Kossow advised the firm that he conducted a private law practice under the name Emergent Solutions Group (Emergent). He also advised the firm of the nature and extent of his practice.
On October 25, 2001, the firm's administrator sent a memo requesting that each firm associate "prepare a list of all matters in which you may be providing legal representation on a pro bono basis and/or representation of family or friends, or for any matters which have not been specifically set up as clients of the firm." The memo further advised that under the terms of employment with the firm, associates should not provide legal services in any capacity other than as employees of the firm. Kossow furnished the requested information. After receiving the memo and while continuing to work for the firm, Kossow accepted new business and represented clients for the benefit of Emergent and in violation of the firm's policy. Kossow did not disclose the outside work to the firm.
In January 2002, the firm intercepted a signed engagement letter and retainer check payable to Emergent that was addressed to Kossow at the firm's address. Without disclosing the interception to Kossow, a firm representative asked Kossow if he had done any work for that client. When Kossow denied having done any, the representative showed Kossow the engagement letter and fired him.
Pursuant to an unconditional guilty plea tendered by Kossow, the referee recommended that Kossow be found guilty of violating Rule Regulating the Florida Bar 4-8.4(c), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
At the hearing on discipline, Kossow testified that he earned approximately $18,500 in fees from handling matters for outside clients after he received the October 25 policy memo. He testified he knew that after October 25 his outside work was a violation of the policy outlined in the memo. He further testified that he did not share any of those outside fees with the firm. According to one of the firm's representatives (two testified at the hearing), the firm made no demand on Kossow for any portion of those fees or for return of any moneys, although the representative testified that he believed Kossow caused economic loss to the firm in billable hours and wasted firm resources. Both firm representatives testified that Kossow was hired at $135,000 per year but was transferred out of the tax division and into the estates division at a reduced salary of $100,000 per year, due in part to his failure to meet the billable hour requirements. One representative, who was also one of Kossow's supervisors, testified that Kossow's work product was never adequate. However, Kossow also introduced into evidence complimentary notations on his work from other firm supervisors.
As to discipline, the referee recommended that Kossow receive a public reprimand and that he pay the Bar's costs. In making this recommendation, the referee noted that Kossow has no prior disciplinary history. The referee found as the sole aggravating factor that Kossow's conduct was dishonest and selfish. The referee declined to find the aggravating factors of victim vulnerability, misappropriation or *546 waste of firm resources, and failure to make restitution. The referee also found that no waste of firm resources was proven and that a theft of firm resources was not established. With regard to restitution, the referee noted that a firm representative made it clear the firm had no desire to represent the clients that Kossow had personally represented and made no demand for a portion of the fees received by Kossow as result of his representation of these clients.
As to mitigation, the referee found that Kossow was a young attorney (age 32) who was inexperienced with the demands of a hectic firm that expected him to supervise himself. The referee also found other factors in mitigation, including (1) Kossow now works successfully as a wealth strategist for Bank of America, (2) he has expressed embarrassment and remorse for his misconduct, (3) he has taken two CLE ethics courses, (4) he has good character, (5) he made full and free disclosure to the Bar, (6) he did not harm any clients of the firm or the public, and (7) his misconduct stemmed more from an imperfect understanding of his obligations to the firm than from deceit or any intent to harm the firm. The referee classified Kossow's misconduct as a failure to maintain his personal integrity.
The Bar has petitioned for review, challenging the referee's recommended discipline.

ANALYSIS
As a preliminary matter, neither of the parties challenges the referee's findings of fact and the recommended rule violation. Accordingly, we approve these findings without further discussion.
As to discipline, although a referee's recommendation is persuasive, this Court does not pay the same deference to this recommendation as it does to the guilt recommendation because this Court has the ultimate responsibility to determine the appropriate sanction. Generally speaking, this Court will not second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing caselaw or in the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). The Bar argues that the referee's recommendation is far too lenient, and asserts that a ninety-day suspension for Kossow's unethical misconduct is appropriate. On the other hand, Kossow argues that the referee's recommendation is reasonable in light of the significant mitigation found by the referee.
We agree with the Bar that a public reprimand is too lenient for what was blatantly dishonest and deceitful conduct on Kossow's part. Kossow continued to represent clients outside of the firm and accept new clients despite his knowledge of the firm's policy against outside employment. Further, Kossow furthered his own financial goals at the firm's expense. A firm representative testified that in servicing these outside clients, Kossow emailed documents to himself, had the firm's administrative staff copy books and treatises from the firm's library, and utilized work time to talk to the other members of the firm about his outside cases. It does not matter that Kossow's use of the firm's time and resources to represent nonfirm clients, contrary to the firm's stated policy, may not be quantifiable to an exact amount. It is unquestionable that by using the firm's equipment, materials, and time (during which Kossow could have been working for the firm, or the associates who discussed Kossow's cases with him could have been doing work for the firm), Kossow misappropriated the resources of the firm that employed him, thereby compromising the good of the firm to his own financial ends. *547 Further, Kossow's unethical conduct did not end there. When a firm representative asked him a question related to his moonlighting, Kossow could have admitted that he had continued to represent clients outside of the firm and was accepting new clients as well. Instead, he attempted to conceal his ongoing misconduct by answering dishonestly when asked about having done work for the client whose letter was intercepted.
In prior cases, we have suspended attorneys who moonlighted in contravention of firm policy and who willfully deceived their firms with regard to this outside representation. In Florida Bar v. Cox, 655 So.2d 1122, 1122 (Fla.1995), an attorney accepted cases without the knowledge and consent of his firm even though the firm had a policy against unauthorized outside legal employment. Cox further collected and kept fees generated from his outside clients. Cox also billed the clients on the firm's stationery, thereby using firm resources in furtherance of his moonlighting. Id. As with Kossow, when Cox was initially confronted, he denied such conduct; however, when faced with documented evidence of his misconduct, he admitted to having collected fees. Id. The Court rejected Cox's claim that his misconduct merited only a public reprimand. Id. at 1123. Despite the lack of harm to either Cox's firm, his clients, or his firm's clients, the Court imposed the thirty-day suspension recommended by the referee, concluding that Cox's unauthorized moonlighting and willful deceit towards his firm "reflect[ed] a pattern of intentional misconduct and deception which warrants serious [discipline]." Id.
With regard to Kossow's ongoing misuse of the firm's resources to represent his own personal clients and thereby further his own financial interests, a thirty-day suspension is more than fair to Kossow, and could actually be considered lenient. Other states have imposed harsher discipline on attorneys who have engaged in such conduct. For example, in In re Cupples, 979 S.W.2d 932 (Mo.1998), the Missouri Supreme Court suspended indefinitely an attorney who concealed the fact that he was conducting a private law practice while engaged in full-time employment for a firm, used firm resources to represent his separate clients, and exposed the firm to potential malpractice liability based on possible conflicts of interest between his personal clients and the firm's clients.[1] In aggravation, the court found that Cupples had a disciplinary history, possessed substantial experience in the practice of law, and refused to acknowledge the wrongful nature of his conduct. Id. at 937. In imposing an indefinite suspension, the court used language especially pertinent to the instant case:
[Cupples' conduct] involves dishonesty, deceit, and misrepresentation. The firm believed that Cupples was a full time employee who would devote one hundred percent of his professional time and efforts to the firm. Cupples' actions directly contradicted the firm's expectations, constituted an appropriation of firm resources for private gain, and exposed the firm to potential malpractice liability. His conduct was deceitful, dishonest, and misrepresentative. As a consequence, this case requires discipline and mandates sanctions.
Id. at 936.
We similarly conclude that Kossow's conduct towards the firm was disloyal *548 and deceitful. An attorney who uses firm resources to place his or her pecuniary interests over those of the firm engages in misconduct that indubitably calls into question the attorney's fitness to practice law, and such ongoing and intentional misconduct by an attorney justifies serious discipline. Therefore, we conclude that a thirty-day suspension is the minimum discipline that should be imposed upon Kossow for his unethical and dishonest dealings with the firm. This conclusion is consistent with Florida Standard for Imposing Lawyer Sanctions 7.2, which provides that suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury to the public, a client, or the legal system. Without question, Kossow intentionally violated his professional duty to the firm, and his misappropriation of firm time and resources harmed the firm. We caution that in the future, the discipline imposed may be harsher for attorneys who represent outside clients in violation of firm policy, misuse their firms' resources to represent those clients, and act dishonestly by failing to disclose those clients to their firms.

CONCLUSION
Accordingly, Kenneth David Kossow is hereby suspended from the practice of law for a period of thirty days. The suspension will be effective thirty days from the filing of this opinion so that Kossow can close out his practice and protect the interests of existing clients. If Kossow notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Kossow shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Kenneth David Kossow in the amount of $1,238.71, for which sum let execution issue.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs specially with an opinion, in which CANTERO, J., concurs.
LEWIS, J., specially concurring.
I agree with the majority, and I have become increasingly concerned with the type of conduct we consider today. This record not only supports the majority view today but, in my estimation, reveals a very serious problem that must be firmly addressed. Here, the respondent was an associate in a law firm who, during his employment with the firm, diverted funds, resources, and time that should have been flowing to the benefit of the firm which was paying him a very generous salary. When confronted with questions regarding these clandestine activities, he not only misled the firm  he was blatantly untruthful. He was given a number of opportunities to disclose, admit, and confront his misconduct but chose to be evasive and continue his personally profitable endeavors. At no time did the offender offer to pay or reimburse the firm for any portion of the thousands of dollars of fees earned or time and resources he pilfered as a result of his clandestine law practice. All of this is clearly substantiated in the record.
The referees conclusions as to the aggravating and mitigating factors are most interesting because they appear to include an almost bitter reluctance to find aggravation. Although finding the conduct to be dishonest and selfish, the referee simply *549 declined to find any other aggravating factors including harm to the victim, failure to make restitution, or waste of firm resources. The referee determined that testimony provided by the witnesses of wasted resources consisting of the respondents e-mailing himself documents, the copying of treatises, and consulting with other lawyers about his cases did not establish a theft of firm resources. In my view this is, most assuredly, a very questionable finding at best. Most notably, the referee failed to find that the thousands of dollars earned secretly by the respondent while employed by the firm should have gone to the firm and also rejected a finding of any theft of firm resources whatsoever.
The referee concluded that the firm was not a vulnerable victim such as an unsophisticated client, but vulnerability, while provoking an emotional response, is not a fundamental element of theft. In mitigation, the referee did note that the conduct did not result in any harm to any client of the firm or to any member of the public but it most certainly impacted the firm itself.
This Courts past disciplinary sanctions for analogous conduct would support an even greater sanction than that assessed today as can be seen in Florida Bar v. Gillin, 484 So.2d 1218 (Fla.1986), Florida Bar v. Cox, 655 So.2d 1122 (Fla.1995), and Florida Bar v. Arcia, 848 So.2d 296 (Fla. 2003). In Gillin, an attorney was suspended for six months for the misdirection of fees which a client had paid directly to him rather than to his firm. There, the attorney had made restitution for the fees, resulting in no continuing harm to any party. The referee properly considered Gillins absence of prior disciplinary history, his character and reputation, his community involvement, and full restitution to the firm in imposing a six-month suspension.
The majority opinion follows and is supported by Florida Bar v. Cox, in which this Court imposed a thirty-day suspension for similar moonlighting activities. There, Cox accepted clients without the knowledge and consent of the firm, which violated a firm policy against unauthorized outside legal employment. Cox initially denied that he had engaged in moonlighting while employed as an associate with the law firm, and initially even denied that he had represented those outside clients and collected legal fees from them. Cox was found to be in violation of Rule Regulating the Florida Bar 4-8.4(c) for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation for the performance of legal services for clients without the consent or authorization of the law firm and attempting to conceal the fact from his employer. As we noted in Cox:
Although Coxs conduct may not have caused serious harm to the clients or the firm where he was employed, the facts reflect a pattern of intentional misconduct and deception which warrants serious punishment. Cox continued to engage in unauthorized legal employment even after he was specifically warned against it, and, even more importantly, willfully deceived the firm about his conduct.
655 So.2d at 1123.
We also held an attorney to be in violation of our rules in Florida Bar v. Arcia, 848 So.2d 296 (Fla.2003), when he violated the firms employment policy, which prohibited associates from independently representing the firms clients or prospective clients and retaining the fees earned from such prohibited, clandestine representations for their own enrichment. In Arcia, the attorney generated approximately $62,000 while operating his own separate professional association in contravention of firm policy requiring any fees earned to be *550 submitted to the firm. Arcia received a three-year suspension followed by a three-year period of probation with rehabilitative conditions instead of disbarment primarily because the mitigating factors of remorse, inexperience in the practice of law, and timely restitution of the full amount diverted from the firm were present.
Certainly, the facts giving rise to our decision in Arcia are distinguishable from those we see today but this Court made a very important statement as to misappropriation of firm and client funds when we reasoned:
Conduct such as Arcias (i.e., an attorney stealing from a law firm) has been held to constitute grand theft. We conclude that, for purposes of attorney discipline, theft of firm funds is serious enough to warrant disbarment under most circumstances. While theft of client funds rends the fundamental bond between a lawyer and the client, theft of firm funds breaches the trust that law firms must place in their attorneys as professionals to act as representatives of the firm.
848 So.2d at 299-300 (citation omitted).
As we bring this unfortunate matter to a conclusion, we must not fail to advise the bench and bar that this type of extra-employment conduct, when contrary to a law firm's policy, simply cannot be condoned and will face appropriate sanction. Time, materials, and resources are firm assets and when misappropriated under circumstances such as these in conducting a separate practice of law or secreting firm clients it is most certainly a form of theft.
CANTERO, J., concurs.
NOTES
[1] The court allowed the attorney to petition for reinstatement after a minimum of six months.