475 So.2d 1240 (1985)
THE FLORIDA BAR, Complainant,
v.
Arnold HECKER, Respondent.
No. 65563.
Supreme Court of Florida.
September 19, 1985.
Rehearing Denied October 28, 1985.
*1241 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Jacquelyn Plasner Needelman, Bar Counsel, Fort Lauderdale, for complainant.
Bernard Berman of Bernard Berman, P.A., Fort Lauderdale, for respondent.
PER CURIAM.
This attorney discipline proceeding is before us on the complaint of The Florida Bar and the report of the referee appointed to conduct hearings on the complaint. We have jurisdiction. Art. V, § 15, Fla. Const.
Respondent pleaded guilty in early February 1983 to the offense of criminal conspiracy to traffic in one thousand pounds of cannabis. We suspended respondent from the practice of law by an order entered on February 15, 1983. That suspension continues in effect. Respondent was adjudged guilty and sentenced to two years imprisonment in April 1983. Upon complaint of The Florida Bar, we appointed a referee and referred the complaint for hearing. Based on the pleadings and evidence, the referee found as follows:
COUNT I
The factual allegations of Count I of the Complaint as contained in Paragraphs 1 through 5 inclusive, were admitted by the Answer. Those facts are therefore established without the necessity of proof. I therefore find that under Count I the Complainant has established by clear and convincing evidence that Respondent, at all times a member of The Florida Bar, was charged by information in Case No. 82-10844 CF-A with the offense of criminal conspiracy to traffic in 1,000 pounds of cannabis, a second degree felony, as to which information Respondent pled guilty on or about February 1, 1983, and for which offense Respondent was adjudged guilty and sentenced to two years in prison on or about April 29, 1983.
COUNT II
1. In August, 1982, Respondent contacted [an acquaintance] to inquire as to whether [he] could supply Respondent with four kilos of cocaine or knew someone who could do so, as a result of which inquiry [the acquaintance] contacted the Fort Lauderdale Police Department and received authorization to act as an undercover agent for the Police Department and to tape telephonic conversations between [himself] and Respondent. Thereafter, over the period of the next several days, there were numerous telephonic conversations between Respondent and [the undercover agent], in which arrangements were discussed by which [the undercover agent's] supposed source of cannabis and cocaine would sell four kilos of cocaine and 1,000 pounds of marijuana to a buyer represented by Respondent. At the various meetings between Respondent and one or more undercover agents for the Police Department, and during the many recorded telephone conversations between Respondent and [the undercover agent], discussions were held concerning price, testing, and when and where and under what conditions the principals would meet for exchange of the cocaine and cannabis for money.
2. While the foregoing facts were established by clear and convincing evidence, I find as a fact that all of the foregoing telephone discussions and meetings were a prelude to further discussions and meetings between Respondent and one or more of the same persons which latter discussions and meetings formed the factual basis for the information in Case No. 82-10844 CF-A, under which Respondent was convicted and which conviction is the subject of Count I hereof. Accordingly I find that the factual matters contained in Count II of the Complaint are merely a part and parcel and a continuation of the criminal conduct with which Defendant was *1242 charged and of which he was convicted in Case No. 82-10844 CF-A.
3. For a period of time of a year or more preceding August, 1982, Respondent had been extensively engaged in obtaining Securities and Exchange Commission approval for public financing of a corporation known as American Oriental Aerospace, Inc., of which Respondent was an officer, director and one of the principle stockholders. During the same period of time Respondent was extensively engaged in developing sources of business for the corporation, in the course of which he had sought the services of [his acquaintance], a commercial airline pilot, as consultant. Thus, when Respondent was approached by an individual identified as Charles McDonnell who represented himself as a potential investor in Respondent's financially distressed corporation, and who also asked Respondent to locate a source for purchase of four kilos of cocaine, Respondent made the inquiry of [his acquaintance], which inquiry initiated the events described in Paragraph One above. During the series of ongoing discussions during which Respondent discussed with [the undercover agent] the purchase of four kilos of cocaine, Respondent on several occasions stated to [the undercover agent] that he (Respondent) was not interested in the drug transaction but only interested in accommodating Mr. McDonnell in order to obtain the necessary financing for his corporation, and on at least one occasion, Respondent urged [the undercover agent], whom Respondent thought was actively engaged in the ongoing business of drug sales, to get out of that type of work and restrict his activities to legitimate matters.
4. Respondent candidly admitted his participation and denounced himself as being both stupid and naive, characterizations which I find to be fully corroborated by the evidence. Respondent is and has been since his arrest remorseful for his conduct and he has continued, notwithstanding his incarceration and suspension, to be active in civic matters and to fulfill within his capabilities his proper duties and functions as a father and as a husband. Prior to his arrest Respondent had been active in Bar matters and both before and after his arrest he had a good reputation of honesty and fair dealing. Subsequent to his arrest Respondent voluntarily offered substantial assistance to law enforcement officers to implicate and assist in locating his co-conspirator, Charles McDonnell. Respondent's conduct did not involve loss or injury to any client. Respondent has never been guilty of any other criminal offense.
The referee recommends that respondent be found guilty of violating Florida Bar Code of Professional Responsibility, Disciplinary Rule 1-102(A)(3) (engaging in illegal conduct involving moral turpitude), and of Florida Bar Integration Rule, article XI, Rule 11.02(3)(a) (committing an act contrary to justice or good morals), and Rule 11.02(3)(b) (misconduct constituting a felony). We approve the referee's recommendations of guilt.
The referee recommends as a disciplinary measure that respondent's suspension from the practice of law remain in effect for three years from March 1983, and thereafter until his civil rights have been restored and until he is reinstated under the rules of reinstatement. The Bar challenges the referee's report on two grounds. First, that the referee erred in finding in mitigation that respondent voluntarily offered substantial assistance to law enforcement officers which implicated and assisted in locating respondent's co-conspirators. It is well established that a referee's finding of fact is presumed correct and will be upheld unless clearly erroneous or lacking in evidentiary support. The Florida Bar v. Baron, 392 So.2d 1318 (Fla. 1981); The Florida Bar v. McCain, 361 So.2d 700 (Fla. 1978). The Bar points out that both the prosecutor and police officer investigating respondent's crime deny that they received any substantial assistance from respondent. They averred that the only assistance received was the name of respondent's *1243 co-conspirator and his purported telephone number, both of which proved to be of no value. This view of respondent's limited assistance is consistent with respondent's own averments that he was duped into trying to locate a drug source as part of a legitimate business deal, knew nothing of any other illegal activities, and had minimal knowledge of what transpired. It may be, as respondent claims, that he told the authorities everything he knew about illegal activities, but the record does not support the finding that respondent provided substantial assistance to law enforcement.
The Bar also argues that the recommended suspension is inadequate given the gravity of respondent's misconduct. In the Bar's view respondent should be disbarred. We agree. Respondent's conduct in attempting to act as a drug procurer is wholly inconsistent with his professional obligations as a member of the Bar. We appreciate that disbarment is the severest sanction available to us and should not be imposed where less severe punishment would accomplish the desired purpose. The Florida Bar v. Moore, 194 So.2d 264 (Fla. 1966). We appreciate also that respondent has served his prison sentence, suffered other personal misfortunes, and appears to be genuinely remorseful. Nevertheless, respondent deliberately set out to engage in illegal drug activity for pecuniary gain. Illegal drug activities are a major blight on our society  nationally, statewide and locally. Necessarily, members of the Bar are brought into contact with the illegal activity because of their professional obligations to offer legal assistance to clients accused of wrongdoing. Members of the Bar should be on notice that participation in such activities beyond professional obligations will be dealt with severely.
The conduct of respondent warrants disbarment. The legal profession cannot tolerate such conduct. Respondent Arnold Hecker is disbarred from the practice of law, effective immediately. Costs in the amount of $1,685.82 are assessed against him, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs with guilt, but dissents from the punishment.