674 So.2d 729 (1996)
FLORIDA BOARD OF BAR EXAMINERS re N.W.R.
No. 86148.
Supreme Court of Florida.
May 30, 1996.
Richard C. McFarlain and Charles A. Stampelos of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, for Petitioner.
L. Kinder Cannon III, Chair; Kathryn E. Ressel, Executive Director and Thomas A. Pobjecky, General Counsel, Florida Board of Bar Examiners, Tallahassee, for Respondent.
PER CURIAM.
N.W.R. asks this Court to review the recommendations of the Florida Board of Bar Examiners. We have jurisdiction. Art. V, § 15, Fla. Const.
N.W.R. graduated from a Florida law school in 1993. He successfully completed the July 1993 General Bar Examination and the August 1993 Multistate Professional Responsibility Examination. On the basis of the Board's background investigation, an investigative hearing was conducted in August 1994; the Board subsequently prepared four specifications. A formal hearing was conducted in March 1995. On May 31, 1995, the Board recommended we deny N.W.R. admission to the Bar. For the reasons expressed below, we agree.
Specifications 1(a), 1(b), and 2(a) concern misconduct involving a university post office box while N.W.R. was an undergraduate student. During the 1985-1986 school year, N.W.R. was assigned a mailbox and given the combination to the lock on the box. The next year, N.W.R. was assigned a different mailbox, and the old mailbox was assigned to someone else; the combination on the original box did not change. N.W.R. began to take mail out of the old box which was addressed to the new box holder, whom he did not know. From the fall of 1986 through April of 1988 N.W.R. ordered credit cards and magazines using the new holder's name and box number. He retrieved these from the box, along with the bills for them, without paying for any of the items. N.W.R. also respondedin the new box holder's name  to an invitation to a political fund raiser. Further, he gave the combination to a friend and allowed his friend to use the box for illegal purposes as well.
*730 N.W.R. was caught taking a marked five-dollar bill from the box in April 1988. Specification 1(a) sets out these facts and states that N.W.R. was arrested by the university police for petit theft. He pleaded no contest, adjudication was withheld, and he was placed on probation.
Specification 1(b) states that as a result of the conduct in 1(a), N.W.R. was sued by the new box holder for approximately $3500. N.W.R. denied any wrongdoing, in spite of the admissions in the criminal case involving the same conduct, thus causing the case to be litigated to final judgment. The court found N.W.R.'s actions reckless, malicious, and in complete disregard for the property and privacy of the new box holder, and awarded the new box holder $1500 in damages.
Specification 2(a) also stems from this conduct. On N.W.R.'s bar application, he did not provide the "detailed response" called for by the question directing him to list all instances involving arrest or detention. In response to three letters sent by the Board to elicit more detailed information, N.W.R. responded with a very brief explanation. The Board had to send a fourth letter. The Board found that failure to provide a detailed explanation regarding this arrest constituted lack of candor.
Specifications 2(b) and 3 concern N.W.R.'s March 1990 detention for driving with a suspended license. Specification 2(a) alleges that on his application, N.W.R. described the incident, but said that the police officer "erroneously believed [him] to be in possession of a suspended drivers license." N.W.R. said in his application that the matter was a mistake, and attached a letter he had written to the chief of the university police department requesting additional information about this incident. The Board found that N.W.R.'s claim that his license was not suspended at the time was false, incomplete, misleading, or lacking in candor since his license had been suspended in January 1990 for financial irresponsibility and was not reinstated until March 1990.
Specification 3 concerns testimony at the investigatory hearing about this incident. N.W.R. testified that he had sent the Department of Motor Vehicles proof of insurance prior to the incident, so his license was not suspended at the time. He stated that he tried to point out the mistake to the officer, but that the computer showed the officer the license was suspended. N.W.R. stated that this was a mistake. The Board alleges that this was false, misleading, incomplete, or lacking in candor, since the reinstatement was not effective until March 1990.
Specification 4 states that, since August of 1985, N.W.R. has been cited for sixteen traffic violations and has had his license suspended three times.
The Board found all four specifications proven and found that specifications 1, 2, and 3 were individually disqualifying. The Board found that specification 4 was disqualifying when viewed collectively with the other three specifications. N.W.R. alleges that while most of the facts stated by the Board are correct, they do not support the determination that N.W.R.'s conduct warrants denial of admission when viewed in their proper light. We agree with the recommendation of the Board, but only on the basis of Specification 1(a).
The fact that N.W.R. contested the lawsuit filed against him should not be disqualifying, as recommended under Specification 1(b), particularly in light of the fact that the damages ultimately awarded to the plaintiff were significantly less than those originally claimed. Specification 2(a), also stemming from the mailbox incident, should also not be disqualifying. A review of the exhibits and the records provided to the Board with N.W.R.'s application make it clear that the Board was possessed of all of the information it needed as to the incident, albeit not in the form it preferred.
Specifications 2(b) and 3both concerning N.W.R.'s suspended licensedo not rise to the level of rendering the applicant unfit for admission. Given the time that had passed since the suspension and representation to the officer, and noting the documentation forwarded to the Board regarding this incident, we do not find that 2(b) and 3 are disqualifying.
Specification 4the applicant's driving recordwas found to be disqualifying *731 when viewed collectively with the other specifications. The implications of N.W.R.'s driving record are tangential to his ability and fitness to practice law. Any disregard for the law which this might seem to suggest is tempered by the fact that his driving record has apparently been completely clear for the past two and a half years.
As to Specification 1(a), however, concerning the applicant's pattern of theft and fraud with regard to the mailbox, we conclude that "the Board's findings are supported by competent and substantial evidence and that such findings in the aggregate are sufficient to justify nonadmission to the Bar." See Florida Bd. of Bar Examiners re R.B.R., 609 So.2d 1302, 1304 (Fla. 1992). It is clear that N.W.R. was released from the probation imposed because of the mailbox incident almost six years ago. Still, the only rehabilitating evidence present in the record seems to be his participation in the Guardian Ad Litem program. Because of the serious nature of this misconduct, more is required. "Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society." Fla.Bar Admiss.R., art. III, § 4.e.(7). N.W.R. must make some extra effort to demonstrate rehabilitation sufficient to warrant his admission to the bar. See id.
Accordingly, we deny N.W.R. admission to The Florida Bar at this time. Our decision does not permanently keep N.W.R. from admission to the Bar. Upon a showing of sufficient rehabilitation, he may apply for admission after one year from the date of the Board's adverse recommendation.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
SHAW, J., dissents.