944 So.2d 335 (2006)
FLORIDA BOARD OF BAR EXAMINERS re. Fred C. McMAHAN.
No. SC06-795.
Supreme Court of Florida.
November 22, 2006.
*336 Michele A. Gavagni, Executive Director, Thomas A. Pobjecky, General Counsel, Florida Board of Bar Examiners, Tallahassee, Florida for Complainant.
Fred C. McMahan, pro se, Daytona Beach, Florida, for Respondent.
PER CURIAM.
We have for review a report by the Florida Board of Bar Examiners (Board) recommending that Fred C. McMahan be readmitted to The Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons explained herein, we disapprove the Board's recommendation that McMahan be readmitted.

FACTS
After conducting an investigation and holding a full hearing, the Board issued a report which contains detailed findings with regard to McMahan and his conduct.
In 1991, McMahan was admitted to the practice of law in Florida. As the result of felony convictions in 1997, McMahan filed a petition for disciplinary resignation. The Court granted the petition, which rendered the resignation effective August 14, 1997.
In 2002, McMahan sought readmission to The Florida Bar. As the result of a background investigation, the Board filed specifications and held a hearing. The Board found the specifications proven and disqualifying for McMahan's readmission to the Bar. However, the Board also found that McMahan had established his rehabilitation by clear and convincing evidence and recommended that he be readmitted to The Florida Bar. We strongly disagree.
Specification 1 alleged that McMahan's brother directed a large drug trafficking operation throughout the 1980s. McMahan knowingly participated in the illegal conduct and assisted his brother with these criminal activities in numerous ways. McMahan cultivated and harvested marijuana on farmland in Kentucky. He also participated in the purchase of a farm in his name, on his brother's behalf. McMahan knew the farm was being purchased with funds derived from his brother's illegal drug operation.
McMahan also delivered funds on behalf of his brother to make a payment for land that his brother had purchased. McMahan knew the funds for this transaction were derived from his brother's illegal drug operation.
In addition, during the course of this joint illegal drug operation, McMahan accepted financial assistance from his brother to support him while he attended school. Further, McMahan knowingly assisted other individuals who fraudulently asserted ownership interests in properties forfeited to the government because they were purchased with funds derived from this illegal drug operation.
After being admitted to The Florida Bar, McMahan was indicted by a federal grand jury in 1996 on multiple felony charges as the result of these criminal activities. He eventually entered pleas of guilty to two counts, conspiracy to conduct money laundering and conspiracy to obstruct justice. In 1997, he was adjudicated guilty and sentenced to prison for twenty-four months to be followed by a period of supervised release. The term of imprisonment was subsequently reduced to seventeen months.
*337 Specification 2 stated that due to the felony convictions described in Specification 1, McMahan was automatically suspended from the practice of law in 1997. Thereafter, the Bar filed a disciplinary complaint against McMahan based on the misconduct underlying the felony convictions. In response to that complaint, McMahan petitioned for disciplinary resignation, which this Court granted.
After the Board filed the specifications, McMahan admitted all of the allegations. Thus, the Board found that both specifications were proven. Thereafter, McMahan presented the testimony of three witnesses during a formal hearing.
James Cadwell testified that McMahan is a good lawyer and that McMahan is trying to move on with his life. Cadwell stated that McMahan is now more focused and dedicated than he was before his legal problems. Cadwell also believes McMahan has become an honest and trustworthy person, who accepts responsibility for his past misdeeds. In the Board's report, Cadwell does not provide any specific evidence of McMahan's rehabilitation.
Joseph C. Warren testified that he became familiar with McMahan when McMahan worked at the public defender's office in 1992. At the time, Warren worked for the State Attorney's Office. Warren and McMahan were opposing counsel in the same court for a rather short period, only eight to ten months. Warren testified that McMahan was a dedicated lawyer. Warren last worked with McMahan well over a decade ago, in 1993, and Warren has had only "occasional contact" with McMahan since he was released from prison. Warren believes that McMahan's family exerted influence over him, that McMahan would not have become involved in such illegal activities on his own, and that he has accepted responsibility for his misconduct. Warren also does not provide any specific evidence of McMahan's rehabilitation.
Jerome Mitchell testified that he has known McMahan as a friend for approximately eleven years. During a two-year period, McMahan has been working as a paralegal for Mitchell's firm, which specializes in real estate, land use, and business-related civil litigation. In Mitchell's view, McMahan has complied with the rules associated with disbarred attorneys working as paralegals. Mitchell intends to hire McMahan if he is admitted to the Bar. Mitchell stated that McMahan is a great paralegal who will make a great lawyer. Also, Mitchell believes McMahan has rehabilitated himself by dedicating time to Teen Court (which has given him three awards for his service), helping people learn to read, and taking a significant amount of legal education courses.
McMahan testified that he has focused his energies on Teen Court, the Volusia County Literacy Society, and donating blood. Also, for several years, McMahan has held more than one job to meet his financial obligations.

ANALYSIS
An applicant who affirmatively asserts rehabilitation from prior misconduct is required to produce clear and convincing evidence of such rehabilitation. See Fla. Bar Admiss. R. 3-13; Fla. Bd. of Bar Exam'rs re J.J.T., 761 So.2d 1094, 1096 (Fla.2000). In determining whether McMahan has shown sufficient rehabilitation, "[t]he nature and seriousness of the offense are to be weighed against the evidence of rehabilitation." Fla. Bd. of Bar Exam'rs re D.M.J., 586 So.2d 1049, 1050 (Fla.1991). The "more serious the misconduct, the greater the showing of rehabilitation that will be required." J.J.T., 761 So.2d at 1096. Further, when reviewing a recommendation of the Board with regard *338 to whether an applicant should be admitted to the Bar, this Court is not precluded from "reviewing the factual underpinnings of its recommendation, based on an independent review of the record developed at the hearings." Fla. Bd. of Bar Exam'rs re R.D.I., 581 So.2d 27, 29 (Fla.1991) (quoting Fla. Bd. of Bar Exam'rs re L.K.D., 397 So.2d 673, 675 (Fla.1981)).
McMahan engaged in extremely serious illegal conduct over a lengthy period of time. He knowingly assisted in the cultivation and distribution of illegal drugs. In short, McMahan was an illegal drug dealer. His participation in illegal activities extends over a period of time from before he entered law school into the period he was a member of The Florida Bar. McMahan effectively concealed his illicit background as he entered law school, after subsidizing his education through illegal funds from the unlawful drug operation. In addition, McMahan engaged in a pattern of criminal acts even though he had served as a government attorney in the criminal justice system. Thus, the nature and seriousness of his misconduct weigh heavily when compared to any evidence of rehabilitation.
McMahan's misconduct consisted of the very activities this Court has properly characterized as destructive to society. Further, as McMahan knew from serving as a government attorney in the criminal justice system, "[m]uch of the resources of the judicial system are directed toward curbing the very [criminal] activities" in which McMahan was engaging. Fla. Bar v. Sheppard, 518 So.2d 250, 250 (Fla.1987). As this Court stated in Florida Bar v. Hecker, 475 So.2d 1240, 1243 (Fla.1985), "[i]llegal drug activities are a major blight on our societynationally, statewide and locally." This Court cannot emphasize enough that Bar members or applicants who participate in such activities will and must be accountable and dealt with severely. Id.
Further, McMahan pled guilty to the crimes of conspiracy to conduct money laundering and conspiracy to obstruct justice. The very foundation of these crimes consists of intentional and dishonest acts that undermine our system of justice. This Court has held that "no qualification for membership in The Florida Bar is more important than truthfulness and candor." In re Fla. Bd. of Bar Exam'rs re E.R.M., 630 So.2d 1046, 1048 (Fla.1994).
The overwhelming evidence of McMahan's lengthy criminal activities involving the cultivation and distribution of illegal drugs, along with his demonstrated dishonesty, requires that he make an extraordinary showing of evidence of rehabilitation. Most of the evidence McMahan submitted as proof of rehabilitation relates to activities that are expected generally from any typically responsible citizen. For example, countless people maintain their financial affairs by holding more than one job. To suggest that this status is important and constitutes rehabilitation is misdirected. Numerous responsible citizens donate blood. People are expected to conduct themselves in an honest and trustworthy manner and to accept responsibility for their past misdeeds. Further, it is not a sign of rehabilitation that McMahan complied with the requirements of the Rules Regulating the Florida Bar regarding disbarred attorneys who work as paralegals. He had no choice and would have been in further violation if he had not complied with the rules. Compliance with the rules is absolutely mandatory. See R. Regulating Fla. Bar 3-6.1(f)(an employee "shall" submit sworn, quarterly reports to the Bar). As provided in Florida Bar Admission Rule 3-13(g), "[m]erely showing that an individual is now living as and doing those things he or she should have done *339 throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society." The evaluation here falls far short of the expectations for those having the privilege of admission to The Florida Bar.
Rule 3-13(g) also states that the "requirement of positive action is appropriate for applicants for admission to the Bar because service to one's community is an implied obligation of members of the Bar." McMahan has dedicated time to Teen Court and the Volusia County Literacy Society. He estimated that he has volunteered 700 hours for these two organizations. Considering that he was disbarred effective 1997, he has volunteered less than two hours per week during his period of disbarment, again far less than a convincing demonstration. He simply is not providing service to his community at an exceptional level that demonstrates rehabilitation. See Fla. Bar Admiss. R. 3-13(g). When McMahan's volunteer service is compared to his lengthy criminal activities involving the distribution of illegal drugs, he falls far short of showing that he has been rehabilitated. Because of the "serious nature of [his] misconduct, more is required." Fla. Bd. of Bar Exam'rs re N.W.R., 674 So.2d 729, 731 (Fla.1996). McMahan "must make some extra effort to demonstrate rehabilitation sufficient to warrant his admission to the bar." Id. This Court must protect the members of the public by demanding and requiring the utmost in professional standards for attorneys. See Fla. Bar v. Cox, 794 So.2d 1278 (Fla.2001); Fla. Bar v. Cibula, 725 So.2d 360 (Fla.1998). Our citizens expect more and, most assuredly, they deserve more.

CONCLUSION
Accordingly, we disapprove the Board's recommendation that Fred C. McMahan be readmitted to The Florida Bar. He may reapply for admission two years from the date of this opinion.
It is so ordered.
LEWIS, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., dissents.