PER CURIAM.
We have for review a referee’s report recommending that Philip David Irish be found guilty of professional misconduct and disbarred effective, nunc pro tunc, October 8, 2008. We have jurisdiction. See art. V, § 15, Fla. Const. We approve the referee’s findings of fact, recommendations of guilt, and recommended sanction.
BACKGROUND
The Florida Bar filed a Notice of Determination or Judgment of Guilt demonstrating that Respondent was guilty of six felony charges. On October 8, 2008, the Court issued an order suspending Respondent, pursuant to Rule Regulating the Florida Bar 3-7.2 (Procedures Upon Criminal or Professional Misconduct).
Thereafter, a referee was appointed to consider Respondent’s disciplinary conduct. Before the referee, the parties submitted a joint stipulation agreeing to the facts and several rule violations in the four consolidated disciplinary cases. After *769 holding a hearing, the referee submitted a report for the Court’s review, in which the referee made the following findings and recommendations for the four consolidated cases.
Case No. SC08-1891. In July 2008, in State v. Irish, No. 05019059CF10A (Fla. 17th Cir.Ct. July 15, 2008), Respondent was adjudicated guilty of six felony charges, which included (1) trafficking in gamma butyrolactone (GHB); (2) two counts of possession of a controlled substance without a prescription; (8) possession of cocaine; (4) possession, sale, or delivery of methenolone; and (5) possession, sale, or delivery of mesterolone. He was sentenced to thirty months’ incarceration in a Florida State prison -with a credit of 120 days time served. Based upon Respondent’s misconduct and the six felonies, the referee recommended that Respondent be found guilty of violating Rule Regulating the Florida Bar 4 — 8.4(b) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer).

Case No. SC08-2398

Count I. Mr. Rodriguez had retained Respondent to represent him in five lawsuits. In June 2007, Mr. Rodriguez discovered that Respondent had abandoned his cases after vacating his office. Respondent had missed scheduled court dates, hearings, and a deposition. Mr. Rodriguez’s efforts to communicate with Respondent were unsuccessful. In addition, Respondent failed to return case files.
Based on this conduct, the parties stipulated that Respondent is guilty of violating Rules Regulating the Florida Bar 8-4.2 (violation of the Rules of Professional Conduct is a cause for discipline); 3-4.3 (the commission by a lawyer of an act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the state of Florida and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline); 4-1.1 (a lawyer shall provide competent representation to a client, which requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (a lawyer shall (1) promptly inform the client of any decision or circumstance with respect to which the client’s informed consent is required; (2) reasonably consult with the client about the means by which the client’s objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and (5) consult with the client about any relevant limitation on the lawyer’s conduct when the lawyer knows or reasonably should know that the client expects assistance not permitted by the Rules of Professional Conduct or other law); 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); 4-1.5(a)(l) (an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost); 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); and 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Count II. Mr. Mallor retained Respondent for a civil matter. Mr. Mallor’s efforts to contact Respondent and determine the progress of the case were unsuccessful. Respondent failed to file appropriate pleadings and neglected the case. For *770 this count, the parties stipulated that Respondent is guilty of violating the same rules as set forth in Count I.
Count III. In June 2007, Mr. Ermovick retained and paid Respondent $1000 to represent him as plaintiff in a civil matter. Although Respondent alleged that he sent a demand letter, the defendant never received the letter.
In October 2007, Respondent advised Mr. Ermovick that a lawsuit would be filed. However, Respondent took no action to litigate the matter and failed to represent Mr. Ermovick.
For this count, the parties stipulated that Respondent is guilty of violating the same rules as set forth in Count I.

Case No. SC08-1375

Count I. Mr. Smith hired and paid Respondent $1000 to handle a judgment that had been entered against him. Respondent advised Mr. Smith that he had one year to reverse the judgment before any garnishment action could be taken. After returning from a trip that lasted several months, Mr. Smith discovered that his bank account had been garnished without his knowledge. Mr. Smith’s attempts to contact Respondent were unsuccessful.
Mr. Smith filed a complaint against Respondent with The Florida Bar. The Bar sent letters to Respondent, dated February 21, 2008, and March 12, 2008 (the latter sent by certified mail), requiring an explanation. Respondent failed to reply to these letters.
The parties stipulated that Respondent is guilty of violating rules 3-4.2 (violation of the Rules of Professional Conduct is a cause for discipline); 3^4.3 (the commission by a lawyer of an act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise, whether committed within or outside the State of Florida and whether or not the act is a felony or misdemeanor, may constitute a cause for discipline); 4-1.1 (a lawyer shall provide competent representation to a client, which requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (a lawyer shall (1) promptly inform the client of any decision or circumstance with respect to which the client’s informed consent is required; (2) reasonably consult with the client about the means by which the client’s objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and (5) consult with the client about any relevant limitation on the lawyer’s conduct when the lawyer knows or reasonably should know that the client expects assistance not permitted by the Rules of Professional Conduct or other law); 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); 4-1.5(a)(1) (an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost); 4-8.1 (b) (an applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by rule 4-1.6); and 4-8.4(g) (a lawyer shall not fail to respond in writing within established time periods to any official inquiry by bar coun *771 sel or a disciplinary agency when bar counsel or the agency is conducting an investigation into the lawyer’s conduct).
Count II. In December 2006, Mr. Forbes hired Respondent to represent him in immigration matters. Mr. Forbes paid Respondent $1000. After February 2007, Mr. Forbes was unable to contact Respondent despite several attempts.
Mr. Forbes filed a complaint against Respondent with The Florida Bar. By letters dated November 5, 2007, and November 26, 2007 (the latter was sent by certified mail), the Bar required an explanation from Respondent. He failed to reply to the letters.
Based on this conduct, the parties stipulated that Respondent is guilty of violating the same rule violations as those set forth under Count I of this case.
Case No. SC08-1552. Count I. In March 2007, Mr. Mogulyan retained Respondent and paid him $900 to handle a landlord-tenant security deposit matter and to file an answer. A former tenant had filed the suit against Mr. Mogulyan seeking the return of a security deposit. Respondent failed to research the legal issues properly and he waited over a month to file his appearance. Also, Respondent did not file an answer to the lawsuit, file any affirmative defenses or counterclaim, and did not appear at a hearing on plaintiffs motion for summary judgment. As a result, Mr. Mogulyan had a final judgment entered against him for damages.
The parties stipulated that Respondent is guilty of violating rules 3 — 4.2 (violation of the Rules of Professional Conduct is a cause for discipline); 3-4.3 (the commission by a lawyer of an act that is unlawful or contrary to honesty and justice may constitute a cause for discipline); 4-1.1 (a lawyer shall provide competent representation to a client, which requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation); 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); 4-1.4(a) (a lawyer shall (1) promptly inform the client of any decision or circumstance with respect to which the client’s informed consent is required; (2) reasonably consult with the client about the means by which the client’s objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information; and (5) consult with the client about any relevant limitation on the lawyer’s conduct when the lawyer knows or reasonably should know that the client expects assistance not permitted by the Rules of Professional Conduct or other law); 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation); 4-1.5(a)(1) (an attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost); and 4-3.2 (a lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client).
Count II. Around March 31, 2008, Mr. Mogulyan filed a complaint with The Florida Bar. By letter dated April 8, 2008, the Bar requested an explanation from Respondent. He failed to reply to that letter. Again, by letter dated May 5, 2008, the Bar requested a response to Mr. Mogu-lyan’s complaint. Respondent did not respond.
The parties stipulated that Respondent is guilty of violating rule 4-8.4(g) (a lawyer shall not fail to respond, in writing, within established time periods, to any official inquiry by bar counsel or a disciplinary agency, when bar counsel or the agency is *772 conducting an investigation into the lawyer’s conduct).
Disciplinary Recommendation. Respondent used illegal substances for approximately six years, committed numerous felonies,[1] injured multiple clients, and engaged in professional misconduct that extended over a three-year period. After considering the facts of the four cases, the referee recommended the sanction of disbarment, effective, nunc pro tunc, October 8, 2008, the date Respondent was suspended due to his felony convictions. Also, as a condition precedent to readmission to The Florida Bar, the referee recommended that Respondent be required to pay restitution in the following amounts: Mr. Er-movick, $1000; Mr. Smith, $1000; Mr. Forbes, $1000; and Mr. Mogulyan, $900. Further, the referee awarded costs to the Bar of $1,751.92.
In considering the disciplinary recommendation, the referee noted that Respondent is thirty years of age, was admitted to The Florida Bar in 2003, and does not have any prior disciplinary history. Next, the referee found that the Florida Standards for Imposing Lawyer Sanctions indicate that disbarment is appropriate. See Fla. Stds. Imposing Law. Sanes. 4.1 (failure to preserve the client’s property); 4.41(a) (lack of diligence); 5.11 (failure to maintain personal integrity); and 7.1 (duties owed as a professional).
With regard to aggravating factors, the referee found that Respondent (1) had a dishonest or selfish motive when he accepted payment for legal services never performed (Standard 9.22(b)); (2) engaged in a pattern of misconduct (Standard 9.22(c)); (3) committed multiple offenses (Standard 9.22(d)); and (4) engaged in bad-faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency when he failed to respond to Bar counsel’s letters requiring a response under rule 4-8.4(g) (Standard 9.22(e)).
As for mitigating factors, the referee found (1) absence of a prior disciplinary record (Standard 9.32(a)); (2) inexperience in the practice of law (Standard 9.32(f)); (3) physical or mental disability or impairment (Standard 9.32(h)); (4) imposition of other penalties or sanctions (Standard 9.32(k)); and (5) remorse (Standard 9.32(Z)).
Respondent argued that his misconduct was directly related to drug addiction. The referee found that Respondent presented mitigating evidence that he is addicted to gamma butyrolactone (GHB) and cocaine. However, Respondent failed to present any evidence of addiction to the other two controlled substances that he also pled guilty to possessing, selling, and delivering: the steroids methenolone and mesterolone. As a result, Respondent “did not overcome the presumption of disbarment for his felony conviction for the charges of possession, sale, and delivery of methenolone and mesterolone.” Disbarment is the presumed sanction for a single felony conviction. See Fla. Stds. Imposing Law. Sanes. 5.11(a). Although case law demonstrates that respondents can overcome the presumption, Respondent did not meet this burden.
Next, Respondent failed in his efforts to demonstrate interim rehabilitation, which is a mitigating factor under Standard 9.32(j). The referee considered the opinions of Respondent’s psychiatric and addiction expert, Dr. Seely, but found that Dr. Seely’s opinions regarding Respondent’s recovery were based upon only three hours of telephonic conversations that took *773 place ten days prior to the final hearing. Dr. Seely did not discuss Respondent’s recovery with the professionals who were treating him in prison. Dr. Seely did not even obtain copies of Respondent’s treatment files from prison. Thus, Respondent failed to show current and reliable evidence of his rehabilitation program, addiction treatment, and progress. Further, the referee expressed concern about Respondent’s propensity to abuse substances in the future. Respondent began abusing GHB, steroids, and cocaine when he was fully aware of the illegality of those substances. In fact, most of his use of those substances occurred after he was enrolled in law school or admitted to The Florida Bar. In addition, after his arrest in 2005 for the six felony charges of which he was eventually convicted, he continued to use GHB, steroids, and cocaine. Thus, Respondent failed to show interim rehabilitation.
On Review. Respondent petitions the Court for review, arguing that (1) the referee erred by concluding that addiction could not be considered as a mitigating factor for Respondent’s steroid abuse; (2) the referee erred by not finding two additional mitigating factors; and (3) the referee’s recommended sanction of disbarment is not supported.
ANALYSIS
First, Respondent asserts that the referee erred by concluding that addiction could not be considered as a mitigating factor for Respondent’s abuse of the two steroids. The Court has stated that a “referee’s finding as to the existence [or non-existence] of a particular mitigator is considered a factual determination and is ‘presumed correct and will be upheld unless clearly erroneous or lacking in eviden-tiary support.’ ” Fla. Bar v. Tauler, 775 So.2d 944, 946 (Fla.2000) (quoting Fla. Bar v. Hecker, 475 So.2d 1240, 1242 (Fla.1985)). It is not enough for a party to point to contradictory evidence in the record; if the record contains competent, substantial evidence to support the referee’s finding, the finding should not be disturbed. Fla. Bar v. Broome, 932 So.2d 1036 (Fla.2006). Thus, the burden is on Respondent to prove that the referee erred. Respondent has failed to meet that burden.
The record supports the referee’s finding, which is that Respondent did not present clear and convincing evidence of his addiction to the two steroids. Before the referee, Respondent concentrated on proving that he was addicted to GHB and cocaine. Even when asked about his abuse of the two steroids, Respondent testified that he used them because he believed they made him stronger and enhanced his self-image. Neither Respondent nor Dr. Seely testified that Respondent was addicted to the two steroids. In fact, when Bar Counsel specifically questioned Dr. Seely about the steroids, he did not testify that Respondent was addicted. Thus, the record supports the referee’s finding that Respondent was not addicted to the two steroids. See Tauler, 775 So.2d at 946. This finding, in turn, supports the referee’s determination that the mitigating factor of addiction did not apply to Respondent’s abuse of the steroids.
Second, Respondent claims that the referee erred by not finding two mitigating factors (“interim rehabilitation” and “full and free disclosure to disciplinary board or cooperative attitude toward proceedings”). The burden is on Respondent to prove that the referee erred. See Tauler, 775 So.2d at 946.
With regard to interim rehabilitation, Respondent’s father testified that his son was now behaving as he previously did, before he engaged in drug abuse. There *774 was no medical documentation to support the father’s views. Further, those views were based on Respondent’s behavior while he was in prison, an environment that limited his access to illegal drugs.
Respondent argues that Dr. Seely’s testimony demonstrated that he has achieved interim rehabilitation. We disagree. Dr. Seely discussed Respondent’s condition with Respondent over the phone in two conversations that totaled three hours. There was no evidence of random drug testing or other monitoring techniques. Other than a brief meeting in November 2007, Respondent has not had a face-to-face meeting with Dr. Seely. In fact, Dr. Seely did not even examine any of Respondent’s current medical records, such as those recorded during his recent incarceration. Instead, Dr. Seely reviewed records from 2006, when Respondent was in the Oasis Treatment Center. Shortly after leaving Oasis, Respondent resumed his drug abuse. Thus, the record supports the referee’s finding that the mitigating factor of interim rehabilitation does not apply in the instant case.
Respondent also claims that the referee should have found the mitigating factor of “full and free disclosure to disciplinary board or cooperative attitude toward proceedings.” In direct contrast to Respondents assertion, the referee found the aggravating factor of “bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency when he failed to respond to Bar counsels’ letters requiring a response under Rule 4-8.4(g).” In the record, Respondent even admitted that he failed to respond to the Bar’s inquiries. In addition, there is no evidence that Respondent displayed the high level of cooperation necessary to apply this mitigating factor. See Fla. Bar v. Wolf, 930 So.2d 574 (Fla.2006) (upholding finding of cooperative attitude toward proceedings where respondent waived probable cause hearing, admitted placing trust funds into operating account, and admitted failing to comply with trust account requirements). As Respondent was nonre-sponsive for portions of the proceedings and failed to demonstrate an extraordinary level of cooperation, the record supports the referee’s decision not to apply this mitigating factor.
Third, Respondent challenges the referee’s recommended sanction of disbarment. Respondent claims that the mitigating factors in his case rebut the presumption of disbarment, so the appropriate sanction is a lengthy suspension. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Fla. Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
Disbarment is the presumed sanction when an attorney has been convicted of a felony. See Fla. Bar v. Cohen, 908 So.2d 405 (Fla.2005) (respondent disbarred for felony conviction); Fla. Bar v. Cueto, 834 So.2d 152 (Fla.2002) (same); Fla. Bar v. Barley, 831 So.2d 163 (Fla.2002) (same); Fla. Stds. Imposing Law. Sanes. 5.11(a) (absent aggravating or mitigating circumstances, disbarment is appropriate when a lawyer is convicted of a felony). Pursuant to Standard 5.11(a), a single felony conviction can result in disbarment. Respondent is guilty of six fel *775 onies. Further, as Respondent’s misconduct involves the trafficking, sale, and delivery of illegal drugs, Standard 5.11(c) applies. Pursuant to that Standard, disbarment is appropriate when a lawyer engages in the sale, distribution, or importation of a controlled substance.[2]
Next, Standard 4.1, “Failure to Preserve the Client’s Property,” states that “[disbarment is appropriate when a lawyer intentionally or knowingly converts client property regardless of injury or potential injury.” Here, Respondent misused the funds of several clients to support his illegal drug habits, without providing proper legal services to those clients. In addition, Standard 4.41(a), “Lack of Diligence,” states that “[djisbarment is appropriate when ... a lawyer abandons the practice and causes serious or potentially serious injury to a client.” Respondent clearly abandoned his practice and seriously injured his clients. He lied to a client about the status of a case, and thereafter the client’s bank account was garnished. He failed to file appropriate pleadings and neglected cases. He missed scheduled court dates, hearings, and a deposition. Clients’ efforts to communicate with Respondent were unsuccessful. Respondent failed to return case files. He even vacated his office without informing his clients. Thus, four standards, individually, indicate that disbarment is the appropriate sanction in this case.
Respondent asserts that he did not intend to engage in the illegal acts and disciplinary misconduct. He claims that his actions were due to his addictions to GHB and cocaine, so he should not be disbarred. In contrast to Respondent’s argument, the Court has held “while a substance abuse problem may explain misconduct, it does not excuse it.” Fla. Bar v. Wolfe, 759 So.2d 689, 644 (Fla.2000). Further, in Florida Bar v. Valentine-Miller, 974 So.2d 388, 338 (Fla.2008) (respondent disbarred), the Court stated: “While we ... understand the problems associated with substance abuse and what it can do to a person’s life, we cannot condone respondent’s behavior. We have a responsibility to the citizens of this state. There is never a valid reason for taking client funds held in trust or for completely abandoning clients.” (Emphasis added.)
Next, Respondent claims that the mitigation and his addictions should rebut the presumption of disbarment. He argues that his case is similar to Florida Bar v. Rosen, 495 So.2d 180 (Fla.1986), in which the Court held that serious drug addiction can mitigate misconduct. Rosen was convicted on federal felony charges of knowingly and intentionally possessing cocaine with intent to distribute. He received a three-year disciplinary suspension rather than disbarment. Relying heavily on Ro-sen, Respondent asserts that cases which involve addiction should result in lengthy suspensions rather than disbarments. However, Respondent fails to acknowledge that Rosen voluntarily ceased practicing law when he recognized the depth of his addiction. “To his credit, [Rosen] quietly wound up his law practice towards the end of 1981, when he no longer felt able to adequately protect the best interests of his clients.” Id. at 181. Rosen was arrested and convicted in 1983, after he had voluntarily wound down his law practice in 1981. *776 Id. Further, Rosen overcame his addiction and no longer engaged in drug use. In comparison to Rosen, Respondent did not voluntarily cease practicing law. In fact, Respondent engaged in illegal drug use for approximately six years, including several years while he had clients. His egregious misconduct resulted in over fifty rule violations and directly harmed the public.
Respondent’s misdeeds injured six clients. In the case of Mr. Rodriguez, Respondent missed court dates, hearings, and a deposition and failed to return the case files to the client. With regard to Mr. Mallor’s case, Respondent failed to file pleadings. In Mr. Ermovick’s case, Respondent received $1000 as legal fees but failed to file a lawsuit. For Mr. Smith’s case, Respondent received $1000 as legal fees but failed to oppose a judgment that caused the client’s pay to be garnished. With regard to Mr. Forbes’ immigration case, Respondent received $1000 in legal fees without performing any work. Mr. Mogulyan paid Respondent $900 in legal fees, but due to Respondent’s misconduct a summary judgment was entered against his client. Thus, Respondent’s case is clearly distinguishable from Rosen.
Respondent also i’elies on Florida Bar v. Hochman, 815 So.2d 624 (Fla.2002), in asserting that a suspension is appropriate. That case is also distinguishable. In Hochman, the respondent admitted himself into a treatment facility for drug and alcohol addiction and voluntarily informed The Florida Bar and clients that he misappropriated funds. Hochman voluntarily took responsibility and meaningful action regarding his misconduct. Such actions on the part of an attorney are favorably considered by the Court in determining the appropriate discipline. Thus, Hochman received a three-year suspension instead of disbarment. In the instant case, Respondent did not voluntarily report his drug abuse to the Bar. He did not voluntarily report his misdeeds of client neglect, incompetent representation, misuse of client funds, and conduct involving dishonesty, fraud, deceit, or misrepresentation. He did not take steps to protect his clients. Even after Respondent was arrested for the drug-related felony charges in 2005, he continued to engage in illegal drug use. Further, in contrast to Hochman, who voluntarily reported his misconduct, Respondent engaged in bad-faith obstruction of the disciplinary proceeding.
Although Respondent proved that he was addicted to GHB and cocaine, he has failed to demonstrate the significant amounts of mitigation that were present in Rosen and Hochman. In fact, a comparison of Respondent’s case with Rosen and Hochman shows that Respondent’s mitigation is insufficient to overcome the presumption of disbarment.
Based on the standards, case law, and Respondent’s egregious misconduct, the referee’s recommendation of disbarment is supported.
CONCLUSION
Accordingly, Philip David Irish is hereby disbarred effective, nunc pro tunc, October 8, 2008. As Respondent is currently suspended, it is unnecessary to provide him with thirty days to close out his practice to protect the interests of existing clients. Philip David Irish shall fully comply with Rule Regulating the Florida Bar 3-5.1(g). Further, Respondent shall accept no new business from the date this opinion is filed until he is readmitted to the practice of law in Florida.
Respondent shall pay restitution to his former clients Mr. Ermovick, in the amount of $1000; Mr. Smith, in the amount of $1000; Mr. Forbes, in the amount of $1000; and Mr. Mogulyan, in the amount of $900. Payment of all resti *777 tution is a condition precedent to applying for readmission to The Florida Bar.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 82399-2300, for recovery of costs from Philip David Irish in the amount of $1,751.92, for which sum let execution issue.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. At the final hearing, Respondent admitted that he was directly importing the GHB. He ordered it from Slovenia and had it mailed via UPS.

. The Court has noted that "[ijllegal drug activities are a major blight on our society ... [and] [m]embers of the Bar should be on notice that participation in such activities beyond professional obligations will be dealt with severely.” Fla. Bar v. Sheppard, 518 So.2d 250, 250 (Fla.1987) (quoting Fla. Bar v. Flecker, 475 So.2d at 1243) (disbarring attorney charged with possession of 298 grams of cannabis, who admitted that he had been selling it for profit).