# Supreme Court of Florida

_____

No. SC17-1494
_____

**FLORIDA BOARD OF BAR EXAMINERS RE: DONALD L. FERGUSON.**

[May 3, 2018]

PER CURIAM.

This case is before the Court to review the Findings of Fact, Conclusions of

Law, and Recommendation of the Florida Board of Bar Examiners (Board) on the

application of Donald L. Ferguson for readmission to The Florida Bar.  The

application is Ferguson's second attempt at readmission following his disciplinary

resignation from the Bar in 2000.  The Board recommends that Ferguson be

readmitted to the Bar.  We have jurisdiction.  *See* art. V, § 15, Fla. Const.; *see also*

Fla. Bar Admiss. R. 3-23.7.[1]  For the reasons that follow, we disapprove the

---

1. Under Rule of the Supreme Court Relating to Admissions to the Bar (Bar Admission Rule) 3-23.7, when the Board issues a favorable recommendation regarding an applicant seeking readmission to the practice of law after having been disbarred or having resigned while disciplinary proceedings were pending, the Board is required to file its report and recommendation with the Court for "final action."

Board's action on Ferguson's application and deny him admission to the Bar at this time.

## BACKGROUND

Donald L. Ferguson was admitted to The Florida Bar in 1973. He worked as an assistant U.S. Attorney and then went into private practice as a criminal defense lawyer. In 1995, he was charged in federal court with conspiracy to obstruct justice and money laundering. Ferguson pled guilty to the two charges and was sentenced in 1999 to twenty-four months in prison and three years' supervised release. His conspiracy to obstruct justice conviction was based on him having notarized the affidavits of two individuals who had been arrested on drug trafficking charges, knowing that the affidavits included false statements and would or might be used in judicial proceedings for some fraudulent or deceitful purpose. The affidavits stated that a certain person in Colombia had nothing to do with the drug smuggling conspiracy for which the affiants had been arrested. The affidavits were intended to be used either to oppose extradition in Colombia or for some other purpose. One of the arrestees, Ferguson knew, was a high-ranking member of a Columbia-based drug-trafficking organization. Ferguson did not represent the persons whose affidavits he notarized. He notarized the affidavits because he was asked to do so by a lawyer associated with a Washington D.C. law firm that was sending him lucrative criminal defense cases.

Ferguson's money laundering conviction stemmed from his receipt of $75,000 in cash from an individual associated with the same Washington, D.C. law firm that was sending him lucrative cases and in turn passing it on to the wife of a criminal defendant to use in obtaining the release of her husband on bond. He delivered the money for the same reason he notarized the false affidavits: because he was asked to do so by the people who were sending him lucrative legal business and he did not want to "ruffle [their] feathers."

Shortly after Ferguson entered his guilty pleas, the Court suspended him from the practice of law, effective November 1, 1995. Following his sentencing in 1999, the Bar filed a complaint against Ferguson based on his criminal misconduct. Ferguson then filed a petition for disciplinary resignation, which the Bar did not oppose. The Court granted the petition and Ferguson was allowed to resign on July 13, 2000, effective, nunc pro tunc, November 2, 1995.

In addition, at about the time he was to be sentenced on the 1995 charges, Ferguson was indicted on federal charges of conspiracy to commit money laundering and four counts of money laundering. The indictment charged Ferguson with engaging in monetary transactions with criminally derived proceeds and was based on his acceptance of about $565,000 in cash to defend a client on a charge of first-degree murder. Ferguson ultimately pled guilty in 2001 to one

count of conspiring to receive and deposit narcotics proceeds, and was sentenced to five years' probation to run concurrently with his supervised release term.

Ferguson also failed to timely pay his personal federal income taxes for the years 1996-2008 and 2010-2011, and had liens filed against him for the tax years 1996-1999 and 2000-2002. His failure to meet his federal income tax obligations never resulted in criminal charges, only civil penalties. He has since paid all past-due taxes and satisfied all liens.

In February 2016, Ferguson applied for readmission to the Bar, executing an updated Bar application. The updated application is Ferguson's second attempt at obtaining readmission to the Bar; the Court denied his first application by order dated February 13, 2014. Because Ferguson's updated application and the Board's investigation revealed conduct adversely reflecting on his character and fitness for admission to the Bar, the Board held an investigative hearing, after which it filed three specifications against Ferguson. Ferguson filed an answer, and the Board conducted a formal hearing.

Specification 1(A)(i)-(ii) alleged that Ferguson failed to comply with the rules of the U.S. Court of Appeals for the First Circuit governing attorney discipline by failing to disclose his criminal convictions and by not disclosing his

disciplinary resignation.[2]  Specification 2 alleged that Ferguson failed to disclose his admission to practice before the First Circuit on his first application for readmission to the Bar.  Specification 3 alleged that Ferguson incorrectly stated on his updated application for readmission that his authority to practice before the First Circuit was terminated due to his criminal convictions, when he never actually informed the court of his convictions.

Ferguson denied each specification.  The Board, except for part of Specification 1(A), found each specification proven, but not disqualifying. Ferguson asserted his rehabilitation and as evidence thereof, produced eight letters of recommendation, as well as excerpts from letters submitted with his first application for readmission, attesting to his character, reputation, and professional ability.  Three witnesses also testified on Ferguson's behalf.  One of the witnesses, a manager with Boca Helping Hands, an organization that serves the underprivileged, testified that Ferguson had volunteered approximately 800 hours with the organization since 2011.  Logs and other materials documenting Ferguson's volunteer work with the organization indicate he volunteered a total of 791 hours between 2011 and 2017.  Ferguson testified that he volunteered approximately 600 hours with Habitat for Humanity between 2001 and 2006, and

2. The Board withdrew Specification 1(B) at the formal hearing.

that he had made regular financial contributions to his church and other charitable organizations. In addition, Ferguson put on a presentation for a law school ethics class in 2011 in which he described his legal career, illegal activities, and efforts toward rehabilitation.

Based on the evidence and testimony presented at the formal hearing, the Board found that Ferguson had demonstrated his rehabilitation by clear and convincing evidence. The Board recommends that Ferguson be readmitted to the Bar.

## ANALYSIS

In a Bar admission proceeding, the burden is upon the applicant to demonstrate his or her good moral character. *See Fla. Bd. of Bar Exam'rs re H.H.S.*, 373 So. 2d 890, 891 (Fla. 1979). This Court has held that disbarment alone is disqualifying for admission to the Bar unless an applicant can show clear and convincing evidence of rehabilitation. *See Fla. Bd. of Bar Exam'rs re Papy*, 901 So. 2d 870, 872 (Fla. 2005). In determining whether an applicant has sufficiently demonstrated rehabilitation, the "nature and seriousness of the offense are to be weighed against the evidence of rehabilitation." *Fla. Bd. of Bar Exam'rs re M.L.B.*, 766 So. 2d 994, 996 (Fla. 2000) (quoting *Fla. Bd. of Bar Exam'rs re D.M.J.*, 586 So. 2d 1049, 1050 (Fla. 1991)). The "more serious the misconduct,

the greater the showing of rehabilitation that will be required." *Fla. Bd. of Bar Exam'rs re J.J.T.*, 761 So. 2d 1094, 1096 (Fla. 2000).

Here, the Board's findings as to each specification are supported by the record and the sole issue before this Court is whether Ferguson has clearly and convincingly established his rehabilitation. Ferguson's prior conduct is appalling. He repeatedly chose to disregard his professional and ethical obligations as a member of the Bar so as to not disrupt a lucrative business relationship. His conviction for conspiracy to obstruct justice is particularly egregious in that it involved a flagrant act of dishonesty and his knowing participation in an apparent scheme to present false information to a court. Such acts undermine the very foundation of the legal profession and the judicial process, both of which Ferguson had an obligation as a member of the Bar to respect and uphold. His disregard of this fundamental obligation for pecuniary purposes requires that he make an extraordinary showing of rehabilitation. *See Fla. Bd. of Bar Exam'rs re McMahan*, 944 So. 2d 335, 338 (Fla. 2006) (applicant required to make extraordinary showing of evidence of rehabilitation based on prior involvement in illegal drug operation and convictions for conspiracy to conduct money laundering and conspiracy to obstruct justice).

Ferguson produced evidence with respect to each applicable element of rehabilitation in Bar Admission Rule 3-13. Having reviewed the record and the

Board's report, we find that Ferguson failed to produce sufficient evidence of positive action under Bar Admission Rule 3-13(g). That rule requires that an applicant demonstrate:

> [P]ositive action showing rehabilitation by occupation, religion, or community or civic service. Merely showing that an individual is now living as and doing those things he or she should have done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for applicants for admission to The Florida Bar because service to one's community is an implied obligation of members of The Florida Bar.

Fla. Bar Admiss R. 3-13(g).

Ferguson produced logs and other materials documenting his volunteer work with Boca Helping Hands that indicate he volunteered about 791 hours with the organization between 2011 and 2017. He did not, however, produce comparable documentation with respect to his volunteer work with Habitat for Humanity. Ferguson produced documentation identifying the dates he volunteered with Habitat for Humanity and the tasks performed, but did not produce any documentation identifying the number of hours he volunteered with the organization. As with all applicants seeking to establish their rehabilitation from prior misconduct, Ferguson was required to document his positive action with a degree of specificity. *See Fla. Bd. of Bar Exam'rs re J.J.J.*, 682 So. 2d 544, 545 (Fla. 1996) (applicant failed to sufficiently document positive action). This

includes not only documenting the type of positive action performed and when it occurred, but the number of hours spent engaged in it.

Based on the foregoing, Ferguson engaged in 791 hours of documented positive action between 2011 and 2017, an average of about 131.8 hours per year or 2.5 hours per week. Such a showing, while commendable, is hardly extraordinary, particularly when weighed against his prior misconduct. The same is true even if this Court were to consider Ferguson's purported 600 hours of volunteer work with Habitat for Humanity in addition to the 791 hours he volunteered with Boca Helping Hands, a combined total of 1,391 hours for the sixteen-year period between 2001 and 2017, an average of about 86.9 hours per year. Simply put, Ferguson's evidence of positive action fails to clearly and convincingly establish that he put forth the extra effort to overcome his past mistakes. *See McMahan*, 944 So. 2d at 339; *M.L.B.*, 766 So. 2d at 998 ("Applicants attempting to overcome past misconduct must show some *extra effort* in order to demonstrate rehabilitation sufficient to warrant admission to the bar.") (emphasis added). "Because of the 'serious nature of [his] misconduct, more is required' " of Ferguson. *McMahan*, 944 So. 2d at 339 (quoting *Fla. Bd. of Bar Exam'rs re N.W.R.*, 674 So. 2d 729, 731 (Fla. 1996)).

**CONCLUSION**

Accordingly, for the reasons discussed above, we disapprove the Board's Findings of Fact, Conclusions of Law, and Recommendation, and deny Donald L. Ferguson admission to The Florida Bar at this time. He may reapply for admission after two years from August 9, 2017, the date of the Board's recommendation. *See* Fla. Bar Admiss. R. 3-23.6(d).

It is so ordered.

LABARGA, C.J., and LEWIS, CANADY, and POLSTON, JJ., concur.
LAWSON, J., dissents with an opinion, in which PARIENTE and QUINCE, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LAWSON, J., dissenting.

Now 71 years old, Donald L. Ferguson has not practiced law in Florida for over 22 years, since his suspension by order of this Court, effective November 1, 1995. Mr. Ferguson was admitted to the Maine Bar in 2010 and remains a member in good standing there. After an evidentiary hearing, the Board of Bar Examiners unanimously found that Ferguson had established his "rehabilitation" and his "unimpeachable character and moral standing in the community" by clear and convincing evidence, along with every other applicable requirement for readmission set forth in Bar Admission Rules 3-12 (Determination of Present Character) and 3-13 (Elements of Rehabilitation). Those findings, detailed in the Board's 43-page report and recommendation, are amply supported by the record

- 10 -

and therefore should be approved. *See Fla. Bd. of Bar Exam'rs re R.L.W.*, 793 So. 2d 918, 923, 925 (Fla. 2001) ("[T]he Board's findings of fact should be approved if they are supported by competent substantial evidence in the record."). Accepting the Board's findings, I would also approve the recommendation that flows from those findings.

Given the serious nature of Mr. Ferguson's past conduct, I could understand a decision to never consider readmitting Ferguson to the Bar, *see, e.g.*, *Fla. Bd. of Bar Exam'rs re Castro*, 87 So. 3d 699, 702 (Fla. 2012) (stating that no amount of rehabilitation would ever be sufficient to readmit applicant who participated in scheme involving bribery and kickbacks to sitting judge), but I believe that the time to have done that would have been when Ferguson was last rejected for readmission, at the latest. Given that we have permitted Ferguson to reapply, and in consideration of the amount of time that has passed since Ferguson's misconduct, Ferguson's age and work history since his suspension (work that appears to have been necessary to enable Ferguson to pay his substantial debt to the federal government, which he has done), and the Board's character and rehabilitation findings, I do not understand quibbling about whether 791 hours of volunteer service with Boca Helping Hands between 2011 and 2017 (and additional hours with Habitat for Humanity) constitute sufficient "extra effort to overcome his past mistakes." Majority op. at 9. In addition, notions of

fundamental fairness dictate that if the basis for our rejection of Mr. Ferguson's application for readmission is really too few community service hours, we should at least tell him how many hours we think it would take, in the next two years, to atone for his past misconduct. Without that type of guidance, in the rules or elsewhere, the decision to reject Ferguson's application for readmission on this basis alone appears unsettlingly arbitrary.

PARIENTE and QUINCE, JJ., concur.

Original Proceedings – Florida Board of Bar Examiners

Elizabeth J. Walters, Chair, Michele A. Gavagni, Executive Director, and James T. Almon, General Counsel, Florida Board of Bar Examiners, Tallahassee, Florida,

for Petitioner

John A. Weiss of Rumberger, Kirk & Caldwell, Tallahassee, Florida,

for Respondent